### 76705. REYNOLDS v. THE STATE.
(374 SE2d 341)

SOGNIER, Judge.

Douglas Reynolds was found guilty but mentally ill of the offenses of rape, aggravated assault and burglary. He appeals.

1. Appellant contends the trial court erred by denying his motion to suppress both the in-custody statement he made after waiving his *Miranda* rights (*Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966)) and the consent to search form he signed because he was not able, due to mental illness and retardation, to understand

his rights in order to waive them validly.

During the hearing on the motion, Investigator Willie Rosser of the City of Decatur Police Department testified that on the evening of August 21, 1987, the day following the rape-burglary at the victim's apartment on Oakview Road, as part of his investigation he was going from door to door in the apartment complex when he arrived at appellant's apartment, two doors down from the victim's. Rosser was allowed inside and was asking appellant whether he had seen or heard anything when appellant suddenly, "point blank," told Rosser that the police could "just stop this right now 'cause I'm the man that you're looking for and I'm the one that did it." Rosser, who was "very surprised" by appellant's statement, placed appellant under arrest and transported him to the police station.

Within 15 minutes after their arrival at the station, Rosser apprised appellant of his *Miranda* rights by reading directly to appellant a form setting forth those rights, which appellant signed and Rosser witnessed. Rosser testified that appellant seemed to understand the rights as read to him, and that appellant asked no questions and made no remarks indicating he was unable to understand what the rights meant. Rosser also testified that appellant wrote his signature on the waiver form at a normal speed and with the effort of a normal or average person. Immediately thereafter, appellant gave a statement which Rosser taped on a tape recorder. The entire taped statement, without alterations or changes, was played for the trial judge during the hearing. In the taped interview, appellant stated that after "admiring" the victim since he moved into his apartment, he broke into her apartment by prying open the door and, armed with a butcher knife, proceeded to rape her. In response to Rosser's question "[c]an you tell me exactly what happened when you got into the house," appellant gave a sequential, detailed and unprompted recitation of the facts that matched almost identically the version of the crimes given the police by the victim. At the end of the taped statement, the following question and answer interview occurred:

Rosser: "[H]as anybody used any force to make you make this statement?"

Appellant: "Naw."

Rosser: "Are you making this statement of your own free will?"

Appellant: "Yes, I am."

Rosser: "You has [sic] been advised of your rights by Investigator Rosser?"

Appellant: "Yes, I have."

Rosser: "And you did, did you understand your rights?"

Appellant: "Yes, I did."

Rosser: "And did you also sign a waiver of your rights?"

Appellant: "Yes, I did."

On cross-examination, Investigator Rosser testified that he did not ask appellant any questions regarding his mental capacity, that he did not know whether or not appellant read the waiver form when it was handed to him, and that, after reading appellant the waiver form and the subsequently executed consent to search form, Rosser did not explain any of the terms on either form but instead asked appellant if he understood them. Rosser stated that from the alertness, awareness and eye contact demonstrated by appellant at that time, he had no reason to believe that appellant had any psychiatric problems or was under medication or had less than normal capacity to deal with the police in their investigation.

Appellant's counsel presented documentary evidence that appellant was receiving disability benefits from the Social Security Administration (SSA) based on personality disorders appellant had been experiencing since October 1984. The SSA's medical report indicated appellant was a man with "[b]orderline to dull normal intellectual function" but with no recent or remote memory impairment who was competent to manage funds. Although deemed eligible for disability benefits due to personality disorders, appellant was not receiving any benefits for mental retardation.

The final witness at the hearing was Jerold Lower, the doctor who conducted the court-ordered competency evaluation. During the defense counsel's examination, Dr. Lower was given the SSA's evaluation that appellant's intellectual capacity was "borderline" (but, we note, not "borderline to dull *normal*.") Dr. Lower testified that a person with a borderline intelligence like appellant's would probably not be able to know and understand accurately the meaning of the waiver form and the consent to search form. After listening to the tape-recorded confession, however, Dr. Lower agreed that appellant's statement that he understood his rights at the time they were read to him was "some evidence" that he did understand, though not "fool proof." As to appellant's psychiatric problems, no evidence was introduced to controvert Dr. Lower's testimony that based on his examination of appellant, he did not believe appellant was actively psychotic at the time he waived his *Miranda* rights and consented to the search of his apartment. Dr. Lower testified he thought appellant to be an individual whose serious psychiatric problems fluctuated, leaving moments when appellant was relatively well, and that the tape-recorded confession, which the doctor listened to during the hearing, was not particularly indicative that appellant was psychotic at the time he gave the statement.

"A mere showing that a person who confessed to a crime may have suffered from some mental disability is not a sufficient basis on which to exclude the statement. [Cits.] 'A trial court may be authorized to find that an individual is capable of waiving his rights even

though there is evidence to the effect that he is moderately retarded. [Cit.]' [Cit.] The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by appellate courts unless clearly erroneous. [Cits.] Considering all the evidence presented at the hearing on this issue, we find no error in the trial court's ruling admitting appellant's confession into evidence." *Marlowe v. State*, 187 Ga. App. 255, 257 (370 SE2d 20) (1988).

We note the recent federal court opinion, *Smith v. Zant*, ___ F2d ___ (Case No. 88-8436, 11th Cir., decided August 26, 1988), in which the defendant's convictions were reversed on the basis that the defendant did not intelligently waive his *Miranda* rights under the circumstances. In that case the defendant was severely retarded, possessing an intelligence quotient of 65 (placing him in the bottom two percent of the population) with a mental age of 10 or 11, and encountered excessive stress in his dealings with the police due to his flight after the commission of the crime and his incarceration overnight in another county without communication from his family. We do not find the overwhelming considerations in *Smith* that compelled the federal court to its conclusion present in the case sub judice where the appellant is "borderline to dull normal" in intelligence, able to manage his own funds and sign his name like an average person, and where there is no evidence he encountered "excessive stress" comparable to that of the defendant in *Smith*. Therefore, we affirm the trial court's ruling admitting appellant's confession and the fruits of the consensual search of appellant's apartment into evidence.

2. Appellant contends the trial court erred by denying his motion for psychological testing and evaluation. The record reveals that after appellant was indicted in September 1987, the parties consented to an order for the psychiatric examination of appellant. Pursuant to this order, Dr. Lower evaluated appellant on December 3, 1987, for the stated purposes of determining appellant's competency for trial and criminal responsibility. In his evaluation report, Dr. Lower stated that other than the unprescribed substances and alcohol appellant claimed he had taken at the time of the crimes, there was "no evidence of any other factor which would have interfered with [appellant's] ability to appreciate the illegality of the conduct charged, nor did I see evidence of delusional compulsion." Dr. Lower subsequently met with appellant in late December 1987 and on the Wednesday before trial, the last visit pursuant to the trial court's order, in response to a written motion for psychological testing and evaluation of appellant filed by his counsel, that appellant be examined for the purpose of determining competency to stand trial and degree of criminal responsibility at the time of the offense. Dr. Lower was called by the defense as a witness at trial.

Appellant cites *Ake v. Oklahoma*, 470 U. S. 68 (105 SC 1087, 84 LE2d 53) (1985) and *Lindsey v. State*, 254 Ga. 444 (330 SE2d 563) (1985) to support his contention that the psychiatric examinations he underwent were not sufficient because there was no finding that appellant was mentally competent at the time of the offense. We note that we need not determine whether under *Lindsey*, supra at 448-449, a doctor of psychology qualifies equally with a doctor of psychiatry to examine a defendant since appellant raised no objection before the trial court to the fact that his examination was conducted by Dr. Lower, a doctor of psychology, a diplomate in forensic psychology, director of forensic services at Georgia Mental Health Institute and a graduate of the University of Alabama School of Law, and is thus deemed to have waived all objection. See generally *Phinazee v. State*, 182 Ga. App. 45, 46 (3) (354 SE2d 671) (1987).

We find the case sub judice factually distinguishable from *Ake* and *Lindsey*, supra. In *Ake*, the trial court originally ruled that Ake was not competent to stand trial, then altered that order after the psychiatrist at the hospital to which Ake had been committed informed the court that medication had rendered Ake competent to stand trial. No inquiry had been made to determine Ake's sanity at the time of the offense and the trial court denied the motion for a psychiatric evaluation at state expense. In *Lindsey*, the defendant refused to talk to the psychiatric evaluating team sent by court order to examine him and the trial court denied the motion for a private psychiatric examination in which the defendant requested state funds to employ a specifically requested psychiatrist. The trial court then directed a verdict ruling the defendant competent to stand trial although no psychiatric evaluation addressed the question of whether the defendant was mentally competent to commit the offenses charged. However, in the case sub judice, appellant was examined on three occasions by a psychologist directed by the trial court not only to determine appellant's competency to stand trial but also to determine the degree of appellant's criminal responsibility at the time the offense was committed. Dr. Lower found no factors interfering with appellant's ability to appreciate the illegality of his conduct at the time of the offense in his report to the court. Subsequently, at trial, while Dr. Lower acknowledged that no one could be "absolutely certain" of the mental competency of a criminal defendant, the degree of certainty varied with the mental illness suffered by the defendant, and that based on his observations and talks with appellant, he saw no evidence that at the time of the crime itself appellant was under any delusional compulsion which would have otherwise excused or justified his conduct.

Therefore, under the circumstances set forth above, we find the treatment appellant received met the requirements of *Ake* and *Lind-*

*sey,* supra, and we find no error in the trial court's denial of appellant's motion for psychological testing.

3. In his final enumeration, appellant asserts error in the trial court's denial of his motion for a continuance made at the beginning of trial in order that appellant might undergo psychiatric examination by another doctor once funds were obtained. " 'A motion for continuance is addressed to the sound discretion of the trial court, and this court will not interfere unless it is clearly shown that the court abused its discretion. [Cits.]' [Cit.]" *Heflin v. State,* 183 Ga. App. 149 (1) (358 SE2d 298) (1987). We find appellant's assertion indistinguishable from that raised in *Heflin,* in which we held: "The State complied with its obligations under the United States Constitution as interpreted by the U. S. Supreme Court in *Ake*[, supra], and appellant did not make a showing that additional psychiatric study was necessary. We find no abuse of discretion in the trial court's denial of appellant's motion for continuance." Id. at 150 (1).

*Judgment affirmed. Deen, P. J., and Carley, J., concur.*

DECIDED OCTOBER 6, 1988.

*Richard E. Johnson,* for appellant.

*Robert E. Wilson, District Attorney, James W. Richter, Eleni A. Pryles, Assistant District Attorneys,* for appellee.