## A08A1524. HAMPTON v. THE STATE.
### (670 SE2d 502)

PHIPPS, Judge.

Paul Hampton was convicted on one count each of kidnapping and aggravated sodomy and on two counts of aggravated sexual battery. As a recidivist offender, he was given mandatory sentences of life imprisonment without possibility of parole under OCGA § 17-10-7 (b). Following the denial of his motion for new trial, he appeals. He charges his trial lawyer with ineffective assistance in asserting his defense of mental retardation. He also complains of the trial court's admission in evidence of pretrial statements he made to police. For reasons that follow, we affirm.

Following a request by defense counsel for a mental evaluation of Hampton, the court ordered the Department of Human Resources (DHR) to examine him and make a written report to the court with respect to his competency to stand trial and his degree of criminal responsibility. Pursuant to the order, Hampton was examined by Dr. Deborah Gunnin, a forensic psychologist employed by East Central Regional Hospital. After her initial examination of Hampton, Gunnin determined that due to mild mental retardation he was not competent to stand trial. In her report, Gunnin did not address the issue of Hampton's criminal responsibility, noting that he had not exhibited sufficient understanding of either the purpose of the evaluation or of his right against self-incrimination to proceed with that portion of the examination. Following a hearing, the court likewise found him incompetent to stand trial and ordered him confined in a state facility under the supervision of the DHR. Gunnin later performed a second evaluation and, after changing the test to a format more understandable by Hampton, determined that he was competent to stand trial and that he had the mental capacity to be held criminally responsible for the crimes charged. Following another hearing, the court in turn found Hampton competent to stand trial.

During the trial, the state moved in limine to prohibit the defense from arguing that Hampton lacked the mental capacity to commit the crimes charged due to his mental retardation, because he

had failed to file notice of an insanity defense. In response, defense counsel argued that although he was not going to argue that Hampton was not guilty by reason of insanity or that he was guilty but mentally ill or retarded, his mental retardation was still relevant to explain why, in doing such things as leaving the scene of the alleged crimes, he may have acted in a manner different than a person with normal intelligence. The court tentatively ruled that evidence of Hampton's mental retardation would be admitted only on the issue of whether he lacked the mental capacity to understand *Miranda* warnings that he had been given prior to making his statement to police. When the defense moved for a mistrial based on that ruling, the court denied the motion but indicated a willingness to reconsider the ruling.

At trial, the victim testified that prior to being sexually assaulted by Hampton, she had been at a friend's house drinking alcohol and smoking crack cocaine. After her friend gave her some money, she began walking down the street to get something to eat at a restaurant. En route, she encountered Hampton, whom she knew. He took her to his house to get her some water and then offered to walk her back to her friend's house. As they were proceeding in that direction, however, Hampton forced her into a vacant lot where she lost consciousness due to a blow to her head. When she regained consciousness, he was sexually assaulting her. Afterward, she was taken to a hospital emergency room where she met with an investigator for the Richmond County Sheriff's Department.

At a *Jackson v. Denno* hearing, the investigator testified that after the victim identified Hampton from a photographic lineup, the investigator located Hampton, took him to the sheriff's department, gave him *Miranda* warnings, and obtained a statement from him. The investigator testified that Hampton seemed alert, did not appear to be under the influence of alcohol or drugs, responded appropriately to questions, and related that he had completed the ninth grade.

At the *Jackson v. Denno* hearing, Gunnin appeared as a defense witness. On direct examination, she was asked whether she thought Hampton could have understood the *Miranda* warnings the investigator read to him. Over objection by the state, she responded that he might have understood them but that it would have been difficult for him to do so. When she was then asked whether Hampton would have understood his right to remain silent and consult with an attorney and intelligently waive those rights, Gunnin testified that she did not know because she was not asked to assess his mental competency in those regards.

After hearing the investigator's and Gunnin's testimony, the court found Hampton's statement to the investigator to have been

knowingly, intelligently, and voluntarily given and thus admissible in evidence. An audiotape of the investigator's interview of Hampton was played to the jury. During the course of the interview, Hampton made incriminatory statements that were inconsistent with his testimony at trial.

1. Hampton charges his trial attorney with ineffective assistance in failing to file a "notice to proceed under OCGA § 17-7-131."

There is, however, no such notice. For purposes of OCGA § 17-7-131, there is only a defense of insanity, which may take the form of a plea of guilty but mentally ill, guilty but mentally retarded, or not guilty by reason of insanity.[1] OCGA § 17-7-130.1 and Uniform Superior Court Rule 31.1 provide for the filing of a notice of an insanity defense or of the intention to raise the issue of insanity or mental illness.

Testimony given by Hampton's trial attorney at the hearing on his motion for new trial showed that he did not file a plea of guilty but mentally retarded because he believed that would have virtually assured Hampton's conviction and would have resulted in imposition of a mandatory sentence of life imprisonment without possibility of parole. Instead, because he thought the victim was a highly impeachable witness, counsel testified that he thought it best to defend the case by challenging her credibility.

Appellate courts apply a two-prong test to determine if counsel's performance was ineffective so as to require the reversal of a conviction.

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.[2]

> The burden of establishing the ineffective assistance of trial counsel is a heavy one that requires an appellant to establish both that counsel's performance fell below an objective standard of reasonableness, and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the trial would have been different.[3]

---

[1] See OCGA § 17-7-131 (b).

[2] *Turpin v. Bennett*, 270 Ga. 584, 589 (2) (513 SE2d 478) (1999) (citation omitted).

[3] *Reed v. State*, 248 Ga. App. 107, 108 (1) (545 SE2d 655) (2001) (footnote omitted).

"[T]here is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy."[4] Here, counsel's decision as to which theory of defense to pursue was a matter of trial strategy and tactics that was not unreasonable and thus did not constitute ineffective assistance.[5]

2. Hampton charges his trial attorney with ineffectiveness in failing to request funds for an independent psychiatric evaluation.

Counsel testified that he did not request funds to hire an independent psychiatrist to evaluate Hampton because he found Gunnin well qualified and somewhat sympathetic to the defense. This too was a reasonable strategic decision.[6]

Hampton also complains that the evaluation that Gunnin was requested to perform was deficient, because it regarded only his competency to stand trial and criminal responsibility and not his ability to understand his Fifth Amendment rights. But in her initial report, admitted in evidence at the *Jackson v. Denno* hearing, Gunnin did find that Hampton did not exhibit sufficient understanding of his rights against self-incrimination. And she testified that Hampton would have had difficulty understanding the *Miranda* warnings. Under these circumstances, we find no prejudice to the defense.

3. Hampton charges his attorney with ineffectiveness in failing to object to him being tried in prison garb.

The record, however, reflects that Hampton appeared for trial in a jumpsuit without any distinguishing markings. Therefore, it would appear that his clothing, though issued by the jail, was not so suggestive as to have created a reasonable probability that the outcome of the trial would have been different if he had been dressed in less institutional attire.[7]

4. Hampton contends that the trial court erred in allowing his statement to the investigator to be admitted in evidence because, as found by Gunnin, he lacked the mental capacity to understand his rights against self-incrimination.

A mere showing that a person who has given an incriminatory statement may have suffered from some mental disability is not, however, a sufficient basis on which to exclude the statement.[8]

---

[4] Id. at 108 (1) (a) (footnote omitted).

[5] See generally *Jackson v. State*, 278 Ga. 235, 239 (5) (a) (599 SE2d 129) (2004); *Arellano v. State*, 289 Ga. App. 148, 151 (3) (656 SE2d 264) (2008).

[6] See generally *Winfield v. State*, 278 Ga. App. 618, 621 (2) (629 SE2d 548) (2006).

[7] See *Gay v. State*, 258 Ga. App. 854, 857-858 (4) (b) (575 SE2d 740) (2002); see also *Hayslip v. State*, 154 Ga. App. 835 (1) (270 SE2d 61) (1980).

[8] *Reynolds v. State*, 188 Ga. App. 721, 723 (1) (374 SE2d 341) (1988).

A trial court may be authorized to find that an individual is capable of waiving his rights even though there is evidence to the effect that he is moderately retarded. The question of whether or not a defendant is capable or incapable of making a knowing and intelligent waiver of his rights is to be answered by the trial judge and will be accepted by appellate courts unless clearly erroneous. Considering all the evidence presented at the hearing on this issue, we find no error in the trial court's ruling admitting appellant's confession into evidence.[9]

*Judgment affirmed. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED NOVEMBER 25, 2008.

*Glover, Blount & Millians, Jennie M. Hyatt,* for appellant.
*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney,* for appellee.

---

[9] Id. at 723-724 (1) (citations and punctuation omitted); see also *Kerr v. State*, 194 Ga. App. 604, 605 (2) (391 SE2d 449) (1990) (law does not require high or average degree of intelligence to validate waiver of right to counsel).