A09A1550. JACOBS v. THE STATE.

(683 SE2d 64)

ELLINGTON, Judge.

Following a bench trial, the Superior Court of Toombs County convicted Kenneth Jacobs of six counts of aggravated assault with a deadly weapon in violation of OCGA § 16-5-21 (a) (2). He appeals from the denial of his motion for new trial, contending that the evidence was insufficient to demonstrate that he voluntarily and knowingly waived his right to a jury trial and that he received ineffective assistance of counsel. Finding no error, we affirm.

Viewed in favor of the court's judgment,[1] the evidence showed the following relevant facts. On January 2, 2007, Ola Mae McClain, her two adult daughters, Jessica and Jerrica, and her three small grandchildren went to the Vidalia Police Department and reported that Jerrica's former boyfriend, Kenneth Jacobs, had just shot at them with a handgun. According to Jessica, shortly before the shooting, all six victims had been in her car as she drove down Highway 292 toward her mother's house on Fifth Avenue in Vidalia. While driving, Jessica noticed that a silver Grand Am was following closely behind them. Jerrica looked back at the car and said that the driver was "Kenny." Jessica stopped at a stop sign at the intersection of Symonds and Fifth Avenue, and Jacobs stopped behind them, got out of his car, and started shooting at them. The women fled in the car and went directly to the nearby police station; they reported the assault within a few minutes after it occurred. Jessica described herself as very scared and "shaking like a leaf"; she said that everyone was screaming and crying and that Jerrica kept saying, "I

---

[1] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979); see also *McRae v. State*, 289 Ga. App. 418 (657 SE2d 323) (2008) (following a bench trial, this Court views the evidence in the light most favorable to the court's judgment).

can't believe he just shot at us." According to the officers, when the women arrived at the station, they were very emotional and hysterical, but none of the victims was injured. Ms. McClain and Jessica executed written statements in which they described the incident and identified Jacobs as the shooter. The State arrested Jacobs and charged him with six counts of aggravated assault with a handgun.

At Jacobs' trial, in addition to presenting the evidence above, the State showed that, a few minutes before the shooting incident at issue here, Jessica had driven to Jacobs' house with her mother, Jerrica, and the three children so that Jerrica could get a house key from Jacobs. Jerrica went inside the house and discovered that, although Jacobs was not at home, another woman was there. Jerrica started fighting with the woman. After waiting a few minutes for Jerrica to return to the car, Jessica went into the house to get her, found the women fighting on the floor, and pulled Jerrica outside. Jerrica then started kicking a car that was parked behind the house, breaking the car's taillights, and she tried to break the back window with a brick.[2] Jerrica left Jacobs' house with the rest of the family members in Jessica's car, and they drove down Highway 292 toward Fifth Avenue.

The State also played a recording of a 911 call that had been received by the police department about two minutes before the shooting incident. The caller told the 911 operator that someone had vandalized his car and said, "I'm [driving] right here behind them, and I want to know if [you] can send a[n] officer." The operator asked, "Where are they at?" The caller responded, "[w]e [are] going down 292 back towards [unintelligible]." After telling the caller that an officer was en route, the operator asked for the caller's name, and he responded, "Kenneth Jacobs."

In addition, an officer testified that Kenneth Jacobs' "girlfriend" called the police station shortly after the shooting incident, while the McClain family was still at the station. Jacobs' girlfriend reported that someone had damaged one of Jacobs' cars at his home. The officer called Jacobs on his cell phone about an hour later, and Jacobs claimed that he was in Augusta and was just leaving to drive toward Vidalia.

At trial, Ms. McClain recanted her written statement and claimed that, when someone shot at her family's car several times, she did not turn around to see who did it and, thus, did not see the face of the shooter. Although Ms. McClain denied that anyone had

---

[2] The State arrested Jerrica that night and charged her with criminal damage to property. Before Jacobs' trial, however, the State dismissed the charges on Jacobs' request. Jerrica testified for the defense at Jacobs' trial and admitted that she and Jacobs were "together" again and that Jacobs was like a father to her young daughter.

paid her to change her testimony, Jessica testified in rebuttal that, about a month before Jacobs' trial, Jerrica offered her and their mother $700 to "drop the charges" against Jacobs. According to Jessica, her mother's version of the incident had been consistent until Jerrica offered the money, but, "all of a sudden her story . . . changed."

1. On appeal, Jacobs contends that the State failed to meet its burden of demonstrating that he knowingly, intelligently and voluntarily waived his right to a jury trial.

> A defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. This court will affirm a trial court's decision that a defendant has validly waived [his or] her right to a jury trial unless that decision is clearly erroneous.
>
> When a defendant challenges [the defendant's] purported waiver of the right to a jury trial, the [S]tate bears the burden of showing the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively shows that the waiver was knowingly and voluntarily made. Such extrinsic evidence may include testimony by defense counsel in the motion for new trial hearing about his specific recollections, routine, or standard practices; an affidavit from trial counsel about his specific recollections; and evidence regarding the defendant's intelligence and cognitive ability.

(Punctuation and footnotes omitted.) *Jones v. State*, 294 Ga. App. 169, 169-170 (1) (670 SE2d 104) (2008).

The record in this case shows that, two days before his trial, Jacobs, who was represented by privately retained counsel, filed with the court a handwritten and signed form in which he expressly waived his right to a jury trial and agreed to proceed with a bench trial. In his appellate brief, Jacobs concedes that the record supports a finding that he voluntarily waived a jury trial. He argues, however, that the filing of such form does not show that the waiver was made knowingly and intelligently. See *Balbosa v. State*, 275 Ga. 574, 575 (1) (571 SE2d 368) (2002) ("[W]hen counsel waives a jury trial in the presence of the defendant, the most that can be said is that the defendant voluntarily waived a jury. It remains to be seen whether that waiver was knowing and intelligent.") (citation omitted).

As to whether Jacobs was aware of the ramifications of waiving his right to a jury trial, the record shows that, at the motion for new trial hearing, Jacobs' trial counsel testified at length about his discussions with Jacobs prior to trial concerning the cost of a bench trial versus a jury trial, the differences between the two, and the relative risks associated with a bench trial. Although counsel admitted that he preferred jury trials in criminal cases, he stressed that he had no concerns about having a bench trial in this case. According to counsel, Jacobs decided that he wanted to have a bench trial after expressing concerns about the cost of a jury trial and getting counsel's assurance that, in his opinion, either of the two judges who might be assigned to the case would be fair. Following the motion hearing, the trial court denied Jacobs' motion for new trial based upon the above facts, as well as the court's conclusion that, "[p]rior to proceeding to bench trial, this Court asked [Jacobs] sufficient questions [in open court[3]] to satisfy the Court that [his] waiver was knowing, voluntary, and intelligent."

Jacobs did not testify at the motion for new trial hearing, nor did he present any evidence to contradict the State's evidence, which met its initial burden of showing that the waiver was voluntary, knowing and intelligent, or to demonstrate that the court's findings of fact were clearly erroneous. See *Jones v. State*, 294 Ga. App. at 169-170 (1) (regarding the State's initial burden and the clearly erroneous standard of review).[4] Thus, there is no basis for reversing the court's conclusion that Jacobs' waiver of a jury trial was valid.

2. Jacobs contends that he received ineffective assistance of counsel. Specifically, he argues that counsel improperly advised him to waive his rights to a jury trial and to testify in his own defense, failed to fully investigate the case, and failed to raise certain objections, and that counsel's acts and omissions deprived him of a fair trial.

In order to prevail on a claim of ineffective assistance of counsel, a criminal defendant must show that counsel's

---

[3] The trial transcript in the appellate record does not include a transcript of preliminary proceedings which occurred immediately before or at the beginning of the trial, such as any colloquy between Jacobs, his counsel, and the court, the sequestration of witnesses, and opening statements. But see *Davis v. State*, 287 Ga. App. 783, 785 (2) (653 SE2d 107) (2007) ("Although Georgia appellate courts have often noted that it would be preferable to have defendant's personal participation spread on the record in open court, to forestall subsequent claims of lack of participation or an intelligent or knowing waiver, nonetheless, there is no legal precedent requiring an 'in court' waiver of the right of a jury trial.") (punctuation and footnote omitted).

[4] Cf. *McCormick v. State*, 222 Ga. App. 753, 756 (1) (476 SE2d 271) (1996) (because the State failed to meet its initial burden of showing a prima facie waiver of a jury trial, the fact that the defendant did not testify at the motion for new trial hearing was irrelevant).

> performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984)[.] The criminal defendant must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct. [As the appellate court, we] accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). "As a general rule, matters of reasonable tactics and strategy, whether wise or unwise, do not amount to ineffective assistance of counsel." (Citation and punctuation omitted.) *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). "In the absence of testimony to the contrary, counsel's actions are presumed strategic." (Citation and punctuation omitted.) *McRae v. State*, 289 Ga. App. 418, 419 (657 SE2d 323) (2008). Further, "[w]hether an attorney's trial tactics are reasonable is a question of law, not fact." *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003).

(a) Jacobs complains that counsel improperly advised him to waive his right to a jury trial. Based upon our analysis and ruling in Division 1, supra, we conclude that Jacobs has failed to demonstrate that counsel's advice on this issue constituted deficient performance.

(b) In a related argument, Jacobs argues that counsel was ineffective for advising him not to testify on his own behalf. Jacobs also contends that he was not allowed to make the decision as to whether to testify, but that counsel made the decision for him.

It is axiomatic that

> a criminal defendant has a constitutional right to testify in his own defense. Defense counsel bears the primary responsibility for advising the defendant of his right to testify and the strategic implications of this choice, as well as for informing the defendant that the decision whether to testify is his to make.

(Citations omitted.) *Thomas v. State*, 282 Ga. 894, 896 (655 SE2d 599) (2008). See also *Burton v. State*, 263 Ga. 725, 728 (6) (438 SE2d 83) (1994) ("whether or not to testify in one's own defense is considered a tactical decision to be made by the defendant himself after consultation with his trial counsel") (citation omitted).

At the motion for new trial hearing, counsel testified that he had concerns about Jacobs testifying at trial because, although Jacobs may have been able to explain some of the "gaps" in the evidence, he believed there was the potential for the prosecutor to "trip[ ] up" Jacobs in some areas during cross-examination. Counsel also testified that he believed that there was a good enough defense case to proceed without Jacobs' testimony. After weighing the options, counsel advised Jacobs that, in his opinion, it was not worth the risk to have him testify. According to counsel, Jacobs agreed and did not express any reservations about not testifying at trial. Jacobs did not testify at the motion for new trial hearing or present any evidence which contradicted counsel's testimony on this issue.

In addition, the trial transcript shows that, after presenting the testimony of four defense witnesses, counsel asked for a moment to talk with Jacobs. After conferring with Jacobs off the record, counsel announced that the defense rested. Jacobs was present in the courtroom and did not exhibit any disagreement with the announcement.

Therefore, the record shows that,

> [n]ot only did counsel's testimony support the trial court's ruling on the motion for new trial, but [Jacobs] did not produce evidence as to what he should have known at the time of his decision [about whether to testify] that he did not, nor how that information would have altered his decision.... [In addition, Jacobs] did not present any evidence as to what the content of his testimony would have been had he testified at trial.

(Citation omitted.) *Sims v. State*, 278 Ga. 587, 592 (3) (d) (604 SE2d 799) (2004). Based upon the record before us, including the overwhelming evidence of Jacobs' guilt and the fact that Jacobs presented the testimony of four witnesses who attempted to support the defense theory of mistaken identity, we conclude that Jacobs has failed to demonstrate that counsel's actions constituted deficient performance or that there is any reasonable likelihood that the outcome of the trial would have been different had he testified at trial. Accordingly, this ineffective assistance claim must fail. Id.; see *Robinson v. State*, 277 Ga. at 75-76 (standard for proving prejudice resulting from deficient performance of counsel).

(c) Jacobs claims that his counsel failed to conduct a reasonable investigation and, thus, failed to find evidence that was crucial to his defense. According to Jacobs, his counsel failed to locate and question two anonymous eyewitnesses who gave statements to the police during their investigation, failed to investigate Jessica's "bad feel-

ings" toward him and her motives for identifying him as the shooter, and failed to interview some of the witnesses prior to trial.

(i) Regarding the two anonymous eyewitnesses, an investigating officer testified at the motion for new trial hearing that he did not get the anonymous eyewitnesses' names or addresses because the victims had already identified the shooter, the victims had been able to provide more detailed information about the incident than the anonymous eyewitnesses because the victims actually knew the shooter, the eyewitnesses' description of the incident corroborated what the victims had reported, and the eyewitnesses stated that they did not want to get involved in the investigation. The officer also testified that he did not know of any way to identify or locate the eyewitnesses after the initial investigation was complete.

In addition, trial counsel testified that, when he asked the police department for the eyewitnesses' names, he was told that they wanted to remain anonymous and would not testify at trial. The officers also told him that the eyewitnesses' statements corroborated the victims' statements and, thus, would not be helpful to the defense. Even so, counsel asked Jacobs to talk to people in the area and see if he could find the eyewitnesses. Neither Jacobs nor counsel was able to find them or even get any additional information about them, however.

Given this evidence, Jacobs has failed to demonstrate that his trial counsel was deficient for failing to locate and interview the anonymous eyewitnesses prior to trial.

(ii) As for investigating Jessica's "bad feelings" toward Jacobs and her motives for identifying him as the shooter, counsel testified that he discussed the issue with Jerrica and Ms. McClain, but they were unable to offer any reasons for or incidents leading to the alleged animosity. As a result, counsel decided to abandon that aspect of the defense. Under the circumstances, this was a reasonable trial strategy which does not amount to deficient performance. See *Grier v. State*, 273 Ga. at 365 (4) (reasonable trial tactics and strategy do not amount to ineffective assistance of counsel).

(iii) Moreover, Jacobs has not proffered what favorable evidence, if any, would have resulted had counsel conducted additional witness interviews, nor has he shown that the additional investigation would have yielded evidence that could have been used to impeach the State's witnesses. Thus, he has not demonstrated how he was prejudiced by the alleged lack of investigation. *McRae v. State*, 289 Ga. App. at 420 (2) ("Because [the defendant] failed to proffer the testimony of any uncalled witnesses, it is impossible for him to show there is a reasonable probability the results of the proceedings would have been different. Absent the required proffer, it cannot possibly be said that the additional witnesses would have testified favorably

to [him]."") (citations and punctuation omitted); see *Robinson v. State*, 277 Ga. at 75-76.

(d) According to Jacobs, counsel repeatedly failed to object to leading questions during the prosecutor's direct examination of witnesses. As counsel explained at the motion for new trial hearing, however, if the only objection is that the prosecutor is leading the witness, and the evidence is otherwise admissible and likely to be presented anyway, he usually does not object, especially in a bench trial, given that the judge is able to separate "the wheat from the chaff."[5] This is a reasonable trial strategy that does not amount to deficient performance. See *Grier v. State*, 273 Ga. at 365 (4).

Moreover, other than arguing that the failure to object was "inexcusable and ineffective," Jacobs has failed to demonstrate any prejudice that resulted from counsel's alleged oversights. Therefore, this ineffectiveness claim must fail. *Williams v. State*, 273 Ga. App. 634, 636 (3) (615 SE2d 792) (2005); see *Robinson v. State*, 277 Ga. at 75-76.

(e) Jacobs argues that his counsel was ineffective for failing to object when the prosecutor attempted to impeach a defense witness by asking him if he had recently pled guilty to two counts of theft by taking. The witness testified on direct examination that he saw the shooting, that he knew Jacobs, that Jacobs was not the shooter, and that the shooter did not shoot at the victims' car, but, instead, shot up in the air. The witness also said that he had seen the shooter before, that he thought the man was a drug dealer from Miami, and that the shooter was tall and had dreadlocks, a distinctive appearance that was very different from that of Jacobs. Later, when the prosecutor asked the witness whether he had pled guilty to the theft charges, the witness replied, "Yes, sir."

Under OCGA § 24-9-84.1 (a), when used for the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony or of a crime which involved dishonesty or making a false statement shall be admissible. Theft by taking is not a crime which necessarily involves dishonesty or making a false statement. *Adams v. State*, 284 Ga. App. 534, 540 (3) (644 SE2d 426) (2007) (physical precedent only).[6] Thus, absent evidence which

---

[5] In a bench trial, "it must be presumed that the judge has sifted the wheat from the chaff and selected the legal testimony from that which is illegal and incompetent. This presumption prevails unless from the judgment itself it appears that consideration has been given to testimony which should have been excluded." (Citation, punctuation and footnote omitted.) *Scott v. State*, 270 Ga. App. 292, 295 (2) (606 SE2d 312) (2004). See also *McRae v. State*, 289 Ga. App. at 420 (1) (accord).

[6] "[A]s a decision which was not concurred in by all members of the panel on this point, *Adams* is not binding precedent. Court of Appeals Rule 33 (a)." *Wilkes v. State*, 293 Ga. App. 724, 725 (2) (667 SE2d 705) (2008).

demonstrates that the theft conviction at issue was a felony or involved fraud or deceit, which the State failed to produce in this case, the conviction was inadmissible for impeachment purposes under OCGA § 24-9-84.1 (a). Id.

Although trial counsel testified at the motion for new trial hearing, appellate counsel did not ask him about the evidence or whether his failure to object was an oversight or a strategic decision. "In the absence of testimony to the contrary, counsel's actions are presumed strategic." (Citation and punctuation omitted.) *McRae v. State*, 289 Ga. App. at 419. Further, given the overwhelming evidence of Jacobs' guilt, he has failed to show that there is a reasonable probability that the verdict would have been different if counsel had objected. *Adams v. State*, 284 Ga. App. at 541 (3); see *Robinson v. State*, 277 Ga. at 75-76.

(f) According to Jacobs, his counsel was ineffective when he allowed the prosecutor to "pit one witness against another."

(i) Jacobs argues that the prosecutor improperly attempted to impeach Ms. McClain by asking her whether prior witnesses who had given contrary testimony had either lied or were mistaken about certain facts. Although

> the truthfulness or veracity of a witness is solely within the province of the [factfinder], and we have held that in no circumstances may a witness' credibility be bolstered by the opinion of another, even an expert, as to whether the witness is telling the truth, [Jacobs has failed to show] how the prosecutor's question[s] violated these principles.

(Citations and punctuation omitted.) *Tucker v. State*, 228 Ga. App. 321, 324 (2) (491 SE2d 420) (1997). Ms. McClain's responses to the prosecutor's questions in no way bolstered the veracity of any witness, but, instead, the questions "merely emphasized the conflict in the evidence, which it was the [factfinder's] duty to resolve[.]" (Citations omitted.) Id.[7]

(ii) Jacobs also contends that counsel was deficient when he failed to object to the State's attempted impeachment of Jerrica. After Jerrica denied telling officers at the police department that Jacobs had shot at her and the other victims, the State asked her whether the officers who testified that she had identified Jacobs as

---

[7] Although Jacobs cites to *Cargill v. State*, 255 Ga. 616, 631 (17) (a) (340 SE2d 891) (1986), in support of this alleged error, the Supreme Court of Georgia expressly overruled *Cargill* to the extent that it held that it was improper for a prosecutor to question a defendant about whether other witnesses testified untruthfully when the defendant's testimony conflicts with the prior testimony. *Manzano v. State*, 282 Ga. 557, 560 (3) (b) (651 SE2d 661) (2007).

the shooter were lying. When read in context, the State's question was permissible as part of an attempt to impeach Jerrica with her prior inconsistent statement. OCGA § 24-9-83; *Spann v. State*, 248 Ga. App. 419, 420 (1) (546 SE2d 368) (2001). Therefore, this contention lacks merit.

(g) Finally, Jacobs contends that counsel was ineffective because he failed to object to the admission of two instances of hearsay testimony. Pretermitting whether the testimony at issue was inadmissible hearsay, since both of the declarants testified at trial and were subject to questioning by the defense, the declarants made the statements at issue either during the shooting or immediately thereafter when they arrived, crying and hysterical, at the police station and reported the incident. Thus, they were admissible as part of the res gestae of the crime. OCGA § 24-3-3 ("Declarations accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought, shall be admissible in evidence as part of the res gestae."); *Inman v. State*, 281 Ga. 67, 70 (3) (a) (635 SE2d 125) (2006).

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 24, 2009.

*Jacque D. Hawk*, for appellant.

*Samuel H. Altman, District Attorney, Charles D. Howard, Tony A. May, Assistant District Attorneys*, for appellee.