## A10A1263. FIFE v. THE STATE.
(702 SE2d 454)

ADAMS, Judge.

David Fife appeals his conviction of molesting a four-year-old girl. He contends the evidence was insufficient to support the jury's verdict and that the trial court erred by admitting as evidence his statement to police.

1. Fife contends the trial court erred by denying his motion to suppress the in-custody statement he made after waiving his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). He argues his statement was not knowingly and voluntarily given and that he did not understand his *Miranda* rights because he lacked the mental capacity to understand.

The court held a *Jackson-Denno* hearing regarding the admissibility of the statement. The evidence presented at the hearing showed that Fife was seventeen years old on April 16, 2004, the date of the incident, but that since he was about four or five years old, he has had intellectual limitations possibly partially arising out of the fact that he has an inoperable brain tumor or cyst. Captain Chris Cornell of the Elbert County Sheriff's Department testified that on April 26, 2004, at about 1:30 p.m., he met with Fife in his home in the presence of his parents and another captain — Captain Bennett. Cornell had some knowledge of Fife's mental issues but he did not know any specifics. Cornell read Fife his *Miranda* rights form, and Fife signed the waiver and said he would speak to Cornell. Fife did not ask any questions at the time, nor did his parents make any comments. Cornell did not make any promises nor threaten Fife in any way in order to convince him to waive his rights. And Cornell did not recall Fife acting in any manner that would indicate that he did not understand. Fife then answered questions and indicated that he had not been around or seen the victim on the day in question.

Cornell testified that two hours later that day, he contacted Fife's father and asked if he could talk with Fife again, and Fife's parents brought their son to the sheriff's office for that purpose. Cornell and Officer Wade King met with Fife in the investigator's office while his parents waited in another area. Cornell asked Fife if he still understood the rights that he had read before. Fife replied that he did, and he again agreed to speak. Cornell testified that he did not threaten Fife nor make any promises in order to induce Fife to speak. And Fife never asked for his parents or an attorney during the meeting. Both officers testified that his parents never asked to sit in on the interview nor asked for an attorney.

In the 30- to 45-minute interview, Fife changed his story twice. Cornell confronted Fife with the fact that witnesses claimed that they had seen him with the victim on the day of the incident, and

Cornell asked Fife if he was willing to take a polygraph examination. Fife replied that he would rather not. When further questioned, Fife eventually commented about a time when he had gotten in trouble for touching a different child who was three at the time; Fife said, "I stuck my finger in her." Cornell asked about that incident but then switched back to asking about the present case. After several such iterations, Fife eventually said that he had been holding the current victim in his arms when she slipped and he accidentally grabbed her between the legs. After further questioning, Fife eventually said, "Okay, I did touch her." He said, "I put my fingers inside her like I did [the other girl]." He then said, "I raped her." But Cornell told him that what he did was not rape. Cornell asked him if he liked to do these things, and Fife replied, "I guess so, but my brain tells me to do it." He also said that he had a problem with little girls. At times during the interview, Fife said that he had trouble remembering things because of his brain tumor. Afterward, Cornell and the assistant district attorney decided that Fife needed a psychological evaluation.

Contrary to Cornell and King's testimony, Fife's mother testified that she and her husband asked if they could be in the room with Fife for the interview because he had a mental disability and that, when they were told no, they also asked if Fife could have a lawyer. She testified that Cornell then closed the door without replying. She testified that at the end of the earlier interview at the house, Cornell took Fife out of her presence but she overheard Cornell say to her son, "if you don't own up to doing this, that I will make sure that you get at least 20 years, and I will nail you for it." She testified that Fife functioned on a third grade level and could not read or write more than his name and that he qualified for Social Security disability. But in a letter she wrote in December 2007, Fife's mother wrote, "There is no telling what [Cornell] and [King] told him to get him to say something about what had happened." Fife's mother explained that she was referring to the second interview at the sheriff's office.

On May 21, 2004, the court referred Fife to the Department of Human Resources to determine whether he was "suffering from any mental disorder or defect which might influence his actions or mitigate the circumstances of the offense" and to determine whether Fife was competent to stand trial. Dr. Debra Pierce determined that Fife was mildly intellectually deficient. She diagnosed Fife with "impulse control disorder and borderline intellectual function." She testified that Fife would probably have some educational delays and possibly be slated for special education. She found that Fife had difficulty understanding the seriousness of the charges against him, the potential punishment, and the plea bargaining process, and, accordingly, she found him incompetent to stand trial. She did not

assess Fife's competency to waive his *Miranda* rights, although she testified to the following:

> I did not specifically assess his competency to consent to *Miranda* and to waive his *Miranda* rights; I would say based on the evaluation of his competency to stand trial, and the difficulty he had understanding the consequences of speaking with the district attorney, that it would raise questions about his ability to understand his *Miranda* rights.

The trial court ordered that Fife be civilly committed to determine if he would become competent within a reasonable time. Reevaluation 90 days later produced essentially the same result. But Dr. Pierce held the opinion that Fife was capable of learning the necessary information to become competent to stand trial at some point in the future. Fife was reevaluated in late 2006, and it was determined that he was "suffering from a psychotic disorder not otherwise specified because he has symptoms of hearing voices." As a result, he was recommitted pending his developing the competency to stand trial. Another hearing was held on January 30, 2007 to assess Fife's progress and to determine whether he could be released on bond from his civil commitment. Based on the evidence presented, the court decided to continue the commitment.

But in the summer of 2008, it was determined that Fife was competent to stand trial. Thereafter, the State withdrew the charge of aggravated child molestation and proceeded to trial by jury on the count of child molestation. Fife was convicted and sentenced to twenty years with fifteen to serve and five years on probation.

2. As stated by the Supreme Court:

> In ruling on the admissibility of an in-custody statement, a trial court must determine whether, based upon the totality of the circumstances, a preponderance of the evidence demonstrates that the statement was made freely and voluntarily. Unless clearly erroneous, a trial court's findings as to factual determinations and credibility relating to the admissibility of the defendant's statement at a *Jackson v. Denno* hearing will be upheld on appeal.

(Citations and punctuation omitted.) *Harvey v. State*, 274 Ga. 350, 351-352 (1) (554 SE2d 148) (2001). See also *Hampton v. State*, 294 Ga. App. 857, 861 (4) (670 SE2d 502) (2008). We conclude the trial court's decision here was not clearly erroneous, and therefore his statement was properly admitted at trial.

Following the presentation of evidence at the *Jackson-Denno* hearing, the court found that the fact that Fife had been found incompetent to stand trial was simply one of the factors to be considered in determining whether Fife's statement was voluntary. The court also found that the officers read Fife his rights in his home in the presence of his parents and explained the rights to him; that "there were no questions concerning his rights, there [were] no promises made, no threats made, and that he voluntarily agreed to talk to them, and he signed"; that there was no evidence Fife's mother told the officers that he could not read or write; that the second interview was only about two hours later and that the officers reiterated his rights; and that, accordingly, the waiver was still in effect at that time. The court found that Dr. Pierce had not evaluated Fife regarding the *Miranda* warnings; that she never stated that Fife could not read or write; and that she did not testify to Fife's grade level. The court considered the mother's testimony regarding these points but weighed it against the expert's testimony. Accordingly, the court found from a preponderance of the evidence that Fife was advised of his *Miranda* rights, that he understood them, and that he thereafter gave his statement freely and voluntarily without any hope of benefit or fear of injury.

The preponderance of the evidence supports the court's findings. And the fact that Fife was initially found incompetent to stand trial does not demand the conclusion that he lacked the mental capacity to knowingly and voluntarily waive his rights. See *Griffin v. State*, 285 Ga. 827, 828 (2) (684 SE2d 621) (2009), and citations therein. "A trial court may be authorized to find that an individual is capable of waiving his rights even though there is evidence to the effect that he is moderately retarded." (Citations omitted.) *Hampton*, 294 Ga. App. at 861 (4). This holds true even if a defendant is initially found incompetent to stand trial. Id. The true analysis is whether the totality of the circumstances show that the statement was free and voluntary. Here, we cannot say the trial court's decision was clearly erroneous.

3. Construed in favor of the verdict, the evidence was sufficient. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). The victim testified that Fife had touched her on her "front private" under her clothes. And Fife admitted doing the same thing. Inconsistencies in their testimony merely presented an issue for the jury, not this Court.

*Judgment affirmed. Smith, P. J., and Mikell, J., concur.*

DECIDED OCTOBER 13, 2010.

*Jana M. Whaley*, for appellant.

*Robert W. Lavender, District Attorney, Leon Jourolmon, Assistant District Attorney*, for appellee.