**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**September 10, 2013**

# In the Court of Appeals of Georgia

A13A1430. BIRDETTE v. THE STATE.

MILLER, Judge.

Following a bench trial, Lorenzo Birdette was convicted of rape (OCGA § 16-6-1 (a) (1)).[1] Birdette now appeals from the denial of his motion for new trial, arguing that he did not knowingly, intelligently, and voluntarily waive his right to a jury trial. We discern no error and affirm.

We will affirm a trial court's decision that an appellant has validly waived his right to a jury trial unless the decision is clearly erroneous. (Citation and punctuation omitted.) *Jacobs v. State*, 299 Ga. App. 368, 370 (1) (683 SE2d 64) (2009).

---

[1] The trial court found Birdette guilty but mentally retarded on charges of aggravated child molestation and rape and merged the aggravated child molestation count into the rape count.

The record shows that prior to opening statements at the bench trial, the trial judge conducted the following colloquy with Birdette:

> THE COURT: Mr. Birdette, I want to make sure you understand that we're doing this as a bench trial, meaning that I'm going to sit as a jury would and make the decisions about the facts as well as the law. You and [trial counsel] have talked about that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And that's what you want to do?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. We'll proceed then with the bench trial.
>
> [THE PROSECUTOR]: So just to be clear, Mr. Birdette is expressly waiving his right to a jury trial.
>
> THE COURT: You are giving up your right to a jury trial.
>
> THE DEFENDANT: Yes, ma'am.

At the bench trial, Dr. Guy Jordan, an expert in clinical psychology, testified as a witness for the defense. Dr. Jordan conducted a six-hour psychological evaluation of Birdette in June 2007 pursuant to the trial court's order requiring that Birdette be evaluated to determine his competency to stand trial and his ability to recognize his behavior as criminal at the time of the alleged offense. Dr. Jordan's intelligence and educational achievement testing showed that Birdette had a full-scale

IQ of 52, which falls in the range of mild mental retardation, he read at a first-grade level, and his math skills were at a beginning second-grade level. Dr. Jordan estimated that Birdette had a mental age of about 13 or 14. Nevertheless, with regard to Birdette's competency to stand trial, Dr. Jordan concluded that Birdette had an appropriate understanding of the charges against him; was able to communicate adequately information about his life history and the circumstances that brought him to the present situation; and was able to communicate well enough to be considered legally competent. Dr. Jordan cautioned, however, that certain information might need to be read and explained to Birdette. In his written report, Dr. Jordan stated that in view of Birdette's limited educational achievement,

> any information provided to [Birdette] through the legal system must be done orally as he has no ability to read information or understand it. This limits his competency to information that can be explained to him orally with [Birdette] appropriately summarizing the information to ensure that he understands the concepts presented to him.

At the hearing on the motion for new trial, Birdette's trial counsel testified that he explained to Birdette the differences between a jury trial and a bench trial on several occasions. In particular, he explained that "a jury trial is putting 12 people in a box, a bench trial is just a judge," and at a bench trial, "the judge would handle all of it, listen to both the evidence and make the decision and do the sentencing." Trial

3

counsel stated that he and Birdette discussed the advantages and disadvantages of a bench trial and a jury trial, that he advised Birdette that a bench trial presented a "better chance of some kind of success," and that Birdette "agreed that we should go forward with a bench trial."

At the motion for new trial hearing, Birdette testified that his trial counsel told him prior to trial that "[the trial judge] had got me a doctor" and "[i]t would come out better if [the trial judge] look at the case and [the trial judge] go by what the doctor is saying[.]" When asked whether he discussed with his trial counsel whether to have a bench trial or jury trial, Birdette responded that his trial counsel told him that "[the trial judge] going to be there, and it's going to be a couple more people" and stated that "I'd be ok with [Dr.] Jordan doing what he had to do, and with [the trial judge] hooking me up with a doctor and – it would be good for me to go in front of [the trial judge]." Birdette stated that he did not understand at the time that his trial counsel was advising him to have a bench trial as opposed to a jury trial and did not understand the difference between the two. Birdette explained, however, that he knew what a jury was because his mother told him it consisted of "free-world" or "outside" people. Birdette further testified that if he had known he was not going to have a jury on the day of the bench trial, he would not have gone forward. When asked if, during

4

his colloquy with the trial judge, he understood that he would not have a jury decide his guilt or innocence, Birdette testified: "Well, I know that [trial counsel] said that [the trial judge] was going to do that, but I was going off what [trial counsel] said was the best thing to do. Now, myself, it was up to me, I wouldn't have did that. . . . But since I'm trying to be cool and nice and trying to do the right thing, I went along with what [trial counsel] said." On cross-examination, Birdette conceded that his trial counsel discussed with him what a jury trial was and whether a jury trial or bench trial would be better; that trial counsel recommended a bench trial; and that he told the trial judge he wanted a bench trial based on his trial counsel's advice.

In his sole enumeration of error, Birdette argues that he did not knowingly, intelligently, and voluntarily waive his right to a jury trial. We reject this contention.

A defendant's right to a jury trial is a fundamental constitutional right that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive. *Watson v. State*, 274 Ga. 689, 691 (2) (558 SE2d 704) (2002). "When the purported waiver of this right is questioned, the State bears the burden of showing that the waiver was made both intelligently and knowingly, either (1) by showing on the record that the defendant was cognizant of the right being waived; or (2) by filling a silent or incomplete record through the use of extrinsic evidence which affirmatively

5

shows that the waiver was knowingly and voluntarily made." (Citation and punctuation omitted.) *Seitman v. State*, 320 Ga. App. 646 (740 SE2d 368) (2013).

The record here shows that the trial judge conducted a colloquy with Birdette during which she explained that in a bench trial she would "sit as a jury . . . and make decisions about the facts as well as the law" and Birdette affirmed that he had discussed the issue with his trial counsel and was giving up his right to a jury trial. Birdette nevertheless contends that given his mental limitations, the trial judge should have provided a more extensive explanation of the consequences of a jury trial waiver and required Birdette to repeat what she had explained, as Dr. Jordan recommended.

"A trial court may be authorized to find that an individual is capable of waiving his rights even though there is evidence to the effect that he is moderately retarded." (Citation and punctuation omitted.) *Fife v. State*, 306 Ga. App. 425, 428 (2) (702 SE2d 454) (2010) (finding no clear error in trial court's determination that appellant knowingly and voluntarily waived *Miranda* rights). Even assuming *arguendo* that the State could not carry its burden of proving a valid waiver based solely on Birdette's colloquy with the trial judge, the State also relies on trial counsel's testimony at the motion for new trial hearing. See *Jacobs*, supra, 299 Ga. App. at 370 (1) (State may present extrinsic evidence showing valid waiver of right to jury trial, including

testimony by defense counsel in motion for new trial hearing about his recollections); *Fleming v. State*, 282 Ga. App. 373, 376-377 (2) (638 SE2d 769) (2006) (State carried burden of proof regarding jury trial waiver with trial counsel's testimony at motion for new trial hearing regarding his discussions with appellant). As set forth above, Birdette's trial counsel, who was well aware of Dr. Jordan's evaluation, testified at the motion for new trial hearing that he met with Birdette on several occasions and explained the differences between a jury trial and bench trial and the respective advantages of each. Trial counsel further testified that Birdette agreed that they should go forward with a bench trial based on his recommendation. Further, although Birdette's testimony was contradictory, the trial judge was entitled to credit his statements on cross-examination that his trial counsel discussed with him the nature of a jury trial and whether a jury trial or bench trial would be more advantageous. As discussed above, Birdette also conceded on cross-examination that, based on his trial counsel's recommendation, he affirmed to the judge that he was waiving his right to a jury trial. Finally, the trial judge was entitled to consider Dr. Jordan's conclusion that Birdette was competent to stand trial.

The trial court, having presided over the bench trial and motion for new trial hearing, was in the best position to determine whether, under all the circumstances,

Birdette validly waived his right to a jury trial despite his mental limitations. See *Edwards v. State*, 285 Ga. App. 227, 230 (2) (645 SE2d 699) (2007) (trial court was in best position to determine whether appellant had capacity to understand proceedings and jury trial waiver despite his age). On the record before us, we find no clear error in the trial court's conclusion that Birdette personally, knowingly, intelligently, and voluntarily waived that right.

*Judgment affirmed. Ray, J., concurs. Barnes, P. J., concurs fully and specially.*

A13A1430. BIRDETTE v. THE STATE.

BARNES, Presiding Judge, concurring specially.

While I concur fully in the majority opinion, I write to emphasize that it is especially important for the trial court to ascertain that the waiver of the right to a jury trial is knowingly, intelligently, and voluntarily given in cases, such as this, where the defendant, although mentally competent to stand trial, had limited or no ability to process the written information provided about the waiver of the right. In these cases, the oral presentation of the waiver information is of even greater significance.

Here, a psychologist testified that because of Birdette's mental retardation, he did not have the ability to read or understand the information provided by the legal system about his waiver of a jury trial, and cautioned that certain information might need to be orally presented to him. Although the judge personally questioned Birdette to ascertain that he understood that he was waiving his right to a jury trial and that the judge "was going to sit as a jury," it is troubling that the defendant later testified at his motion for new trial hearing that he was still expecting the jury of "free-world people" to show up at some point during the bench trial.

In *Jones v. State*, 302 Ga. App. 147 (690 SE2d 460) (2010), although trial counsel informed the judge that he had extensively counseled Jones about the difference between an jury trial and a bench trial,

the judge spoke to Jones directly and informed him that he had the right to a jury trial, that twelve persons would sit in judgment in a jury trial, and that the prosecutor would bear the burden of convincing each one of the twelve persons of Jones's guilt beyond a reasonable doubt. The judge explained the voir dire process and made clear that by waiving the right to a jury trial, Jones would be forfeiting the voir dire process and his right to have the 12 persons chosen through that process decide his guilt or innocence, and that the judge instead would be making that determination. Jones confirmed his understanding of such and stated he would rather have a bench trial.

Id at 150-151 (2).

Certainly, this colloquy is not required in every circumstance; indeed, "there is no legal precedent necessarily requiring an 'in court' waiver of the right of a jury trial."(Citation and footnote omitted.) *Davis v. State*, 287 Ga. App. 783, 785 (2) (653 SE2d 107) (2007). However, a defendant's right to trial by jury is one of those fundamental constitutional rights that the defendant must personally, knowingly, voluntarily, and intelligently choose to waive, and do so fully cognizant of exactly what it is that is being waived. See *McCormick v. State*, 222 Ga. App. 753, 755 (1) (476 SE2d 271) (1996) ("[M]any laypersons think a criminal 'trial' naturally includes

2

a jury, and laypersons may not understand that a 'bench' trial does not include a jury.")