**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 27, 2016**

# In the Court of Appeals of Georgia

A16A1225. MCGIL v. THE STATE.                                    DO-043 C

DOYLE, Chief Judge.

After a jury trial, Johntavious McGil was convicted of aggravated assault,[1] armed robbery,[2] theft by taking,[3] and possession of a weapon during the commission of a crime.[4] McGil filed a motion for new trial (later amended), which the trial court denied. McGil appeals, arguing that (1) there was insufficient evidence to support the verdict; (2) the trial court erred by permitting the State to introduce bad character evidence; (3) the verdict was against the great weight of evidence; and (4) he received

---

[1] OCGA § 16-5-21 (b) (1).

[2] OCGA § 16-8-41 (a).

[3] OCGA § 16-8-2.

[4] OCGA § 16-11-106 (b) (1).

ineffective assistance by counsel's failure (a) to present an alibi witness and (b) to call McGil to testify in his own defense. Although the evidence was sufficient, McGil failed to establish ineffective assistance of counsel, and no bad character evidence was admitted, the trial court failed to exercise its discretion and weigh the evidence under the general grounds. Accordingly, we vacate the denial of McGil's motion for new trial and remand the case for further proceedings that are consistent with this opinion.

Viewed in the light most favorable to the verdict,[5] the evidence shows that on July 1, 2014, the victim was parked at a convenience store and was approached by McGil (the victim's former co-worker whom he knew as "Tay"). McGil came to the window of the victim's car, said hello, and told the victim he would give him his phone number, but as the victim took out his phone to take down the number, McGil said "give me your phone." The victim thought at first McGil was joking since they knew each other, but when he looked up, McGil was pointing a .38 caliber revolver at him. The victim gave McGil the phone, and at McGil's insistence, provided the password; McGil told the victim not to follow him, and he fled in a silver sedan driven by another individual.

---

[5] See *Souder v. State*, 301 Ga. App. 348 (687 SE2d 594) (2009).

2

While investigating the crime, police prepared three photographic line-ups; the first on July 1, 2014, the second on July 9, 2014, and the third on July 16, 2014 — the last being the only line-up to contain McGil's photograph. The victim did not make a positive identification of the perpetrator until police presented him with the third line-up, at which point he identified McGil. The victim also identified McGil in court and was very positive of his identification. The victim denied having had a grudge against McGil.

The jury returned a guilty verdict as to all the charges, and the trial court merged the aggravated assault and theft by taking charges with the armed robbery charge and sentenced McGil to 20 years to serve 11 in incarceration with the remainder on probation followed by a 5-year consecutive sentence of probation for the weapons charge.

1. McGil argues that there was insufficient evidence to support the verdict. Nevertheless, the facts, as stated above, were sufficient to establish that McGil approached the victim in the parking lot, and after a brief discussion, robbed him at gunpoint. To the extent that there were inconsistences between the victim's statements to the police and at trial or that the victim's actions after the incident were

suspicious, those issues were for the jury to determine.[6] Accordingly, this enumeration is without merit.

2. Next, McGil contends that the trial court erred by allowing bad character evidence of his alleged gang membership.

During a discussion between the State, the trial court, and the defense, a State witness explained that McGil's driver's license picture was acquired for the photographic line-up by searching a database of gang investigations for the name "Tay," which resulted in the discovery of "Parkway Tay" — a nickname for McGil. The victim later viewed the line-up and identified McGil as the perpetrator. McGil contends that the introduction of the connection to the gang database was bad character evidence, irrelevant to the proceedings. McGil acknowledges that the evidence was not presented to the jury, but he contends that it prejudiced the trial court to sentence him more harshly based on this evidence instead of sentencing him to the ten-year-to-serve sentence offered by the State for a negotiated guilty plea.[7]

The sentencing hearing, however, shows that the trial court sentenced McGil to 11 years to serve based on the nature of the crime and the court's determination

---

[6] See, e.g., id. at 351-352 (3).

[7] McGil turned down the plea deal and instead went to trial.

that McGil should have a lengthy probation. The sentence was only one year of incarceration longer than the negotiated plea offered prior to trial, but four fewer years of incarceration than the State's recommendation at the sentencing hearing. At the motion for new trial hearing, the trial court determined that McGil's alleged gang membership did not affect sentencing, and the court noted that it had sentenced McGil to only one year of incarceration over the mandatory minimum. Accordingly, this enumeration is without error.

3. McGil contends that he received ineffective assistance of counsel.

> To prevail on his claim of ineffective assistance, [the defendant] must prove both that his counsel's performance was deficient and that the deficient performance so prejudiced him that, but for that deficiency, there is a reasonable probability that the outcome of the trial would have been different. We need not analyze both prongs if [the defendant] fails to satisfy either one. When reviewing a trial court's ruling on a claim of ineffective assistance, we uphold the court's factual findings unless they are clearly erroneous and review its legal conclusions de novo.[8]

(a) McGil first contends that his counsel was ineffective because he failed to present an alibi witness. At the motion for new trial hearing, trial counsel testified

---

[8] (Citations omitted.) *Traylor v. State*, 332 Ga. App. 441, 447 (3) (773 SE2d 403) (2015).

that although the purported witness was present at the trial, she did not tell counsel that McGil was with her during the time of the robbery. Additionally, she admitted that trial counsel questioned her about the robbery, but she told him that she did not know anything about it. Based on this information, the trial court did not err by finding the purported alibi witness lacked credibility and by determining based thereon that trial counsel was not deficient for making the strategic decision not to have her testify at trial.[9]

(b) McGil contends that his counsel was ineffective because he failed to allow McGil to testify in his own defense. This contention is belied by the record, however, because the trial transcript shows that McGil told the trial court the decision not to testify at trial was his decision alone, a sentiment to which he also testified at the hearing on the motion for new trial.

> Therefore, the record shows that, not only did counsel's testimony support the trial court's ruling on the motion for new trial, but [McGil] did not produce evidence as to what he should have known at the time

---

[9] See *Ransom v. State*, 297 Ga. App. 902, 906-907 (2) (a) (678 SE2d 574) (2009).

6

of his decision about whether to testify that he did not, nor how that information would have altered his decision.[10]

Accordingly, McGil has failed to establish that he received ineffective assistance of counsel.

4. Finally, McGil maintains that the verdict was against the great weight of evidence and contrary to the principals of equity and justice. Specifically, he contends that there was no independent evidence of the robbery aside from the testimony of the victim, who acted suspiciously by failing to contact the police at the scene of the crime.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is contrary to the principles of justice and equity, or if the verdict is decidedly and strongly against the weight of the evidence. When properly raised in a timely motion, these grounds for a new trial — commonly known as the general grounds — require the trial judge to exercise a broad discretion to sit as a thirteenth juror. *In exercising that discretion, the trial judge must consider some of the things that [he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence.* Although the discretion of a trial judge to award a new

---

[10] (Citations and punctuation omitted.) *Jacobs v. State*, 299 Ga. App. 368, 373 (2) (b) (683 SE2d 64) (2009).

7

trial on the general grounds is not boundless — it is, after all, a discretion that should be exercised with caution [and] invoked only in exceptional cases in which the evidence preponderates heavily against the verdict, — it nevertheless is, generally speaking, a substantial discretion.[11]

At the hearing on the motion for new trial, the trial court stated that this enumeration "is the same as number one, insufficient evidence. I find that there was." With regard to the trial court's analysis of insufficient evidence, however, the trial court rightly found that credibility questions were for the jury. This is a "legal determination that the evidence was sufficient under the standards of *Jackson v. Virginia*."[12] Although the court's colloquy denying the motion for new trial was thorough as to all other aspects of the motion, there simply is no evidence that the trial court "exercised discretion, weighed the evidence, and determined as the 'thirteenth juror' whether the verdict was against the great weight of the evidence or offended the principles of justice and equity."[13] To the contrary, the record shows that

---

[11] (Citations and punctuation omitted; emphasis supplied.) *White v. State*, 293 Ga. 523, 524-525 (2) (753 SE2d 115) (2013).

[12] *Wiggins v. State*, 330 Ga. App. 205, 211 (767 SE2d 798) (2014). *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[13] *Wiggins*, 330 Ga. App. at 211.

8

the trial court simply reapplied the *Jackson* standard. "Accordingly, we vacate the judgment and remand this case to the trial court for consideration of the motion for new trial under the appropriate discretionary standard."[14]

*Judgment vacated and case remanded with direction. Andrews, P. J. and Ray, J., concur.*

---

[14] Id. Compare with *Souder*, 301 Ga. App. at 352 (3).