**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and MERCIER, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2017**

# In the Court of Appeals of Georgia

A17A0951. WHITMIRE v. THE STATE.

BARNES, Presiding Judge.

In connection with a bank holdup, Raymond Charles Whitmire was convicted of armed robbery. He thereafter sought, but was denied, a new trial. In this appeal, Whitmire challenges, inter alia, the sufficiency of the evidence on legal and general grounds. We conclude that the evidence was legally sufficient. But because it appears that the trial judge failed to exercise discretion to sit as a "thirteenth juror" with respect to the general grounds raised, we vacate the denial of Williams's motion for new trial and remand the case for reconsideration thereof. We thus do not reach the remainder of Whitmire's enumerated claims of errors.

1. Where an appellant challenges the legal sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable

to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U. S. 307, 317 (III) (B) (99 SCt 2781, 61 LE2d 560) (1979); see *White v. State*, 293 Ga. 523, 523 (1) (753 SE2d115) (2013).

So viewed, the evidence adduced at the jury trial showed the following. On April 26, 2014, at about 11:00 a.m., a man holding a bag walked into a bank and stood in line for a bank teller. When it was his turn to be assisted, the man approached the teller's window, placed the bag on the counter, then handed the teller a note that demanded money and stated that he had a grenade. After reading the note, the teller saw the imprint of a "small bulge" on the side of the bag, discerned that a weapon was inside, and realized that she was being robbed. Fearful of the man, the teller gave him cash from the teller drawer. The man put the cash in the bag, then exited the bank, carrying with him the bag of cash.

Frantic, the teller began yelling that she had just been robbed. She asked a nearby customer sales representative to secure the building, then ran to a window and observed the robber leaving the scene driving a white, "older model" Nissan Pathfinder with a dealer tag.

2

A police investigation ensued, and Whitmire became a suspect. About a month after the incident, a detective showed to the teller and the customer sales representative a photographic array of six men, one of whom was Whitmire. The teller testified that, during the incident, she had taken note of the man's physical characteristics. The customer sales representative testified that, given her employee training to notice individuals entering or exiting the bank, she had greeted the man – taking note of his physical attributes. When shown the array, both bank employees identified the photograph of Whitmire as the man who had committed the crime.

The State also presented the testimony of a bank customer who was inside the bank during the robbery. During the police investigation, he also pointed to Whitmire's photograph in an array as the man who committed the robbery. At trial, the customer maintained that he was "one hundred percent" certain that Whitmire was the man who had perpetrated the crime. The customer acknowledged on cross-examination, however, that he was "always behind" the man. And when next asked whether the man had "ever turn[ed] and look[ed] at you that you recall," the customer replied, "I don't recall."

Whitmire's two step-daughters were also questioned during the police investigation. One of the step-daughters told police that she was 95 percent certain

3

that the man depicted in a still photograph from the bank's surveillance video was Whitmire. At trial, she recalled that Whitmire had "driven or owned" a white, "90's model" Nissan Pathfinder; she also testified that she had seen a "dummy grenade" inside Whitmire's shed. Whitmore's other step-daughter told police during the investigation that she was 80 to 85 percent certain that the man depicted in the same still photograph was Whitmire. And at trial, that stepdaughter acknowledged further that the man in the still photograph was wearing a jacket and hat that looked like ones belonging to Whitmire. Notwithstanding, both of Whitmire's step-daughters went on to testify that they had recently viewed the bank's security video of the criminal incident and that the perpetrator captured therein did *not* appear to be Whitmire.

A used-car dealer recounted at trial that in February 2014 (about two months before the bank holdup), he sold Whitmire a white Nissan Pathfinder for approximately $2,500, then placed a dealer tag on the vehicle. On April 28, 2014, the dealer initiated repossession proceedings on the vehicle due to Whitmire's failure to maintain the payment schedule.

Police spotted Whitmire driving a white, 1997-model Nissan Pathfinder and arrested him. A subsequent police search of his home yielded, inter alia, two explosive devices, but no hand grenade.

4

Pursuant to OCGA § 16-8-41 (a),

A person commits the offense of armed robbery when, with intent to commit theft, he or she takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon. The offense of robbery by intimidation shall be a lesser included offense in the offense of armed robbery.

Whitmore was charged with committing armed robbery by taking cash, the property of a bank, from the immediate presence of a bank teller by "use of an apparent hand grenade."

(a) Whitmire argues on appeal that the State failed to show "use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[1] He points out that no grenade was found during the search of his residence. He also cites the bank teller's testimony that she did not actually see a grenade during the bank holdup and that the only grenades she had ever seen were depictions in war movies. According to Whitmire, the bank teller's admitted unfamiliarity with the appearance of an actual grenade left reasonable doubt as to whether the teller was in reasonable apprehension of being harmed by such a device.

---

[1] OCGA § 16-8-41 (a).

5

This evidentiary challenge lacks merit. "OCGA § 16-8-41 (a) [does not] require[ ] proof of an actual offensive weapon." *Garrett v. State*, 263 Ga. App. 310, 311 (587 SE2d 794) (2003). Moreover,

> [t]he presence of an offensive weapon or an article having the appearance of one may be established by circumstantial evidence, and a conviction for armed robbery may be sustained even though the weapon or article used was neither seen nor accurately described by the victim. What is required is some physical manifestation of a weapon or some evidence from which the presence of a weapon may be inferred. Furthermore, the test is whether the defendant's acts created a reasonable apprehension on the part of the victim that an offensive weapon was being used, regardless of whether the victim actually saw the weapon.

(Punctuation and footnote omitted.) *Faulkner v. State*, 260 Ga. App. 794, 795 (581 SE2d 365) (2003); see *Marlin v. State*, 273 Ga. App. 856, 858 (2) (616 SE2d 176) (2005); *Millis v. State*, 196 Ga. App. 799, 800 (3) (397 SE2d 71) (1990).

Here, although the robber may not have displayed a grenade to the bank teller, the evidence authorized the jury to find that the robber's acts created for the bank teller reasonable apprehension that the man was threatening her with a grenade to force her to comply with his demand for money. Because there is no merit in this

6

challenge to the legal sufficiency of the evidence, it demonstrates no basis to disturb the judgment. See *Forde v. State*, 277 Ga. App. 410, 410-411 (1) (626 SE2d 606) (2006) (determining that the evidence was sufficient to sustain armed robbery conviction, where the defendant told the store employee that he had a gun and would blow her head off if she did not give him money, and the store employee saw a bulge in the defendant's clothing where the gun was allegedly hidden and believed that the defendant had a gun); *Marlin*, 273 Ga. App. at 858-859 (2) (finding evidence was sufficient to support conviction for armed robbery even though the teller involved in the bank holdup did not actually see a gun, where the defendant handed a note to the teller claiming that he had a gun and that he would shoot everybody in the bank if she did not give him money, the defendant kept his hand concealed under his shirt, and the teller believed that he had a gun); *Martin v. State*, 264 Ga. App. 813 (592 SE2d 483) (2003) (rejecting defendant's argument that his "hand" did not constitute an offensive weapon and he thus could not have been convicted of armed robbery, where the cashier perceived that the defendant – who kept one hand in his coat pocket during the robbery – had a gun); *Faulkner*, 260 Ga. App. at 794-795 (rejecting defendant's argument that because he did not display a gun, the State failed to prove "use of an article having the appearance of a gun, an offensive weapon," where

7

defendant covered his hand with a sock to conceal something shaped like a gun, then defendant pressed the sock into victim's back, and where victim believed a gun was pressed against her back, became afraid, and complied with defendant's demand for money).

(b) Whitmire contends that the State's case left reasonable doubt as to the identify of the bank robber, asserting that certain trial witnesses expressed uncertainty, were unreliable, and/or created inconsistencies in the State's case. But when we assess the legal sufficiency of the evidence, "we put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence." *White*, 293 Ga. at 523 (1).

> [A]ny evidentiary weaknesses, conflicts, or inconsistencies were for the jury to resolve. We do not speculate which evidence the jury chose to believe or disbelieve. Where as here, there was sufficient evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, we must uphold the jury's verdict.

 (Punctuation and footnote omitted.) *Dix v. State*, 307 Ga. App. 684, 686 (1) (705 SE2d 903) (2011); see *Bynes v. State*, 336 Ga. App. 223, 224-225 (1) (a) (784 SE2d 71) (2016) (finding evidence legally sufficient to support armed robbery convictions, and rejecting appellant's challenges that "point[ed] out inconsistencies in the

8

evidence against him and . . . attack[ed] the credibility of the witnesses" because "[s]uch matters are for the jury, and not this Court, to resolve"); *Harris v. State*, 332 Ga. App. 789, 790-791 (1) (775 SE2d 165) (2015) (finding sufficient evidence that appellant committed armed robbery, where victim selected his photograph from lineup and other circumstantial evidence linked him to the crime); *Hogan v. State*, 330 Ga. App. 596, 598 (1) (a) (768 SE2d 779) (2015) (holding that the victim's testimony that defendant robbed him with a gun was sufficient to sustain a conviction for armed robbery); *In the Interest of M. D. L.*, 271 Ga. App. 738, 740 (1) (b) (610 SE2d 687) (2005) (explaining that a witness's prior identification of defendant as the perpetrator constituted substantive evidence, despite witness's recantation at trial).

Accordingly, this challenge to the legal sufficiency of the evidence presents no basis to disturb the judgment.

2. Whitmire contends that the trial court failed to rule upon his claim that he was entitled to a new trial on general grounds.

> Even when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to [evidence and] the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a

timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." In exercising that discretion, the trial judge must consider some of the things that she [or he] cannot when assessing the legal sufficiency of the evidence, including any conflicts in the evidence, the credibility of witnesses, and the weight of the evidence. Although the discretion of a trial judge to award a new trial on the general grounds is not boundless — it is, after all, a discretion that should be exercised with caution and invoked only in exceptional cases in which the evidence preponderates heavily against the verdict, — it nevertheless is, generally speaking, a substantial discretion.

(Citations and punctuation omitted.) *White*, 293 Ga. 524 (2).

The record here shows that Whitmire filed a timely motion for new trial, which grounds explicitly included: the verdict is contrary to the evidence, the verdict is contrary to the principles of justice and equity, and the verdict is strongly against the weight of the evidence. In ruling on Whitmire's motion, the trial court entered a lengthy order that set forth a detailed section addressing Whitmire's arguments that the evidence was insufficient as a matter of law, repeatedly relying upon principles such as the jurors were able to weigh evidence and that they could decide for themselves what evidence to give credit.

10

But "[n]othing in the order of the trial court indicates to us that the trial court performed its duty to exercise its discretion and weighed the evidence in its consideration of the general grounds." *White*, 293 Ga. at 525 (2) (citation and punctuation omitted). And repeated reliance upon the principles cited above denote that the trial court failed to exercise its discretion and weigh the evidence. See id. at 525 (2) ("[R]epeated statements [in the order] that the evidence is sufficient to sustain the verdict denote[ ] that the trial court failed to apply its discretion, as the determination if there is sufficient evidence to support the verdict is a matter of law, not discretion."). A trial court does not "fulfill its duty to exercise its discretion when it applies the standard of review set out in *Jackson v. Virginia* to the statutory grounds for a new trial." *Choisnet v. State*, 292 Ga. 860, 861 (742 SE2d 476) (2013) (discerning that trial court had failed to apply proper standard in assessing the weight of the evidence under OCGA §§ 5-5-20, 5-5-21, where court "stat[ed] only in its order that conflicts in the testimony were matters of credibility for resolution by the jury"). Notably, the State acknowledges in its brief that "from the standpoint of the Defendant/Appellant, . . . the general grounds were legally presented. Accordingly, the appropriate result is to return this case to the Trial Court so that it can properly exercise its discretion in evaluating the evidence."

11

In light of the foregoing, we can conclude only that

the trial court failed to apply the proper standard in assessing the weight of the evidence as requested by [Whitmire] in his motion for new trial. For this reason, we vacate the denial of the motion for new trial, and we remand for the trial court to apply the proper standard to the general grounds and to exercise its discretion to sit as a "thirteenth juror" pursuant to OCGA §§ 5-5-20 and 5-5-21.

(Citations and punctuation omitted.) *White*, 293 Ga. at 525-526 (2); see *McGil v. State*, 339 Ga. App. 130, 133 (4) (793 SE2d 442) (2016).

3. In light of our decision to vacate the denial of the motion for new trial and remand for further proceedings, it is unnecessary for us to address at this time Whitmire's remaining claims of error. See *White*, 293 Ga. at 526 (2), n. 5 (declining to address remaining claims of error, where the denial of appellant's motion for new trial was vacated and the evidence was legally sufficient to support the convictions); *Choisnet*, 292 Ga. 861-862 (explaining that it was "unnecessary for [the appellate court] to address the remaining enumerations of error at this time," where the judgment was vacated and the case remanded for the trial court to consider the appellant's motion for new trial under OCGA §§ 5-5-20 and 5-5-21).

*Judgment vacated and case remanded with direction. McMillian and Mercier, JJ., concur.*