**THIRD DIVISION**
**MCFADDEN, C. J.,**
**DOYLE, P. J., and HODGES, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 4, 2021**

# In the Court of Appeals of Georgia

A20A1648. BERNAL v. THE STATE.

HODGES, Judge.

Following a jury trial, the Superior Court of Cherokee County entered a judgment of conviction against Estuardo Bernal on one count each of child molestation (OCGA § 16-6-4), rape (OCGA § 16-6-1), and terroristic threats (OCGA § 16-11-37). Bernal appeals from the trial court's denial of his motion for new trial as amended, arguing that: (1) the trial court erred in denying his special demurrer, motion to sever, and motion to suppress; (2) the evidence was insufficient to support his convictions; and (3) he received ineffective assistance of trial counsel at sentencing. Because we conclude that the trial court failed to exercise discretion in reviewing Bernal's arguments based upon OCGA §§ 5-5-20 and 5-5-21, we vacate in part the trial court's order denying Bernal's motion for new trial and remand this

case for further proceedings consistent with this opinion.[1] To the extent Bernal's enumerations concerning the trial court's pre-trial rulings affect the universe of evidence to be considered by the trial court on remand, we have reviewed those arguments and find no error. Therefore, we affirm the remainder of the trial court's order.

Viewed in a light most favorable to the verdict,[2] the evidence revealed that Bernal lived with his long-time girlfriend ("the adult victim"), their two children, and the adult victim's daughter, J. G. ("the child victim"), in Canton, Cherokee County. Bernal's relationship with the adult victim was often turbulent, and the child victim frequently heard the pair fighting and her mother crying. The child victim also witnessed Bernal hit the adult victim repeatedly. By 2015, the adult victim attempted to avoid Bernal by retreating to their childrens' room when he arrived home from work. However, the adult victim described an incident in which Bernal chased her down some stairs, caught her on a couch, and forcibly had sexual intercourse with her as she fought him and told him to stop. She relayed another occasion in which Bernal

---

[1] For this reason, we need not consider Bernal's allegation of ineffective assistance of trial counsel during sentencing at this time. See, e.g., *Walker v. State*, 292 Ga. 262, 265 (2) (737 SE2d 311) (2013).

[2] See, e.g., *Picklesimer v. State*, 353 Ga. App. 718 (839 SE2d 214) (2020).

2

stormed the childrens' room, dragged the adult victim from the room, and again forced himself on her against her will.

The day after Bernal dragged the adult victim from their childrens' room, she went to the Canton police station to report the assault. An officer directed her to a local hospital for testing, which revealed the presence of sperm, bruising, and a rash. The next day, the adult victim visited the station again and indicated she did not want to pursue charges against Bernal. She suggested that she did not want to proceed because a man with whom she had recent relations was no longer in the country and that, if Bernal found out about him, Bernal would have killed her.

In November 2015, Bernal moved out of the family's apartment, but begged the adult victim to reconcile in February 2016. The two began dating again, and Bernal supervised the children when the adult victim worked at night. Thereafter, Bernal twice visited the adult victim at her job after taking her children to her sister's house. During the second visit, which occurred after the adult victim informed Bernal that she no longer wished to date him, Bernal told her that she "was going to die and . . . something was going to happen to [her] in one week if [she] didn't go back with him." As the adult victim pleaded for Bernal to explain himself, he returned to his

truck and said, "I'm going to kill you" as he drove away. When the adult victim went to retrieve their children, they exclaimed, "daddy's going to kill you."[3]

That night, the adult victim again called the police. As the adult victim ran to her door to admit a responding police officer, the child victim stopped her and said, "Mommy, I've got something to tell you." The child victim then told the adult victim that, one evening when she was sleeping in the same bed as Bernal, Bernal began pulling her head toward his penis as she tried to push him away. The child victim also reported the incident to the responding officer.

A Cherokee County grand jury indicted Bernal for one count each of child molestation (against the child victim), rape (against the adult victim), and terroristic threats. Bernal did not testify at trial. The trial jury returned verdicts of guilty against Bernal on each count of the indictment, and the trial court denied Bernal's motion for new trial as amended. This appeal followed.

---

[3] The child victim's sister testified that, as she and her siblings drove to a restaurant with Bernal, she saw a gun hidden in the center console of Bernal's truck which Bernal threatened to use on the adult victim if she did not get back together with him.

4

1. Considering Bernal's fourth enumeration first,[4] he initially states that the evidence was insufficient to support his convictions. However, Bernal's actual argument is that the successor judge who considered his amended motion for new trial "declined to make a ruling on the credibility of witnesses or conflicts in witness testimony." Properly considered, then, Bernal contends that the trial court failed to properly apply OCGA §§ 5-5-20 and 5-5-21. Because we conclude that the successor judge failed to exercise discretion in the review of Bernal's "general grounds" argument, we vacate that portion of the trial court's order and remand this case to allow the trial court to exercise its discretion in considering Bernal's argument.

It is well settled that

[e]ven when the evidence is legally sufficient to sustain a conviction, a trial judge may grant a new trial if the verdict of the jury is "contrary to the principles of justice and equity," OCGA § 5-5-20, or if the verdict is "decidedly and strongly against the weight of the evidence." OCGA § 5-5-21. When properly raised in a timely motion, these grounds for a new trial — commonly known as the "general grounds" — require the trial judge to exercise a broad discretion to sit as a "thirteenth juror." A trial court reviewing a motion for new trial based on these grounds has

---

[4] See *Allison v. State*, 356 Ga. App. 256, 258 (1), n. 2 (846 SE2d 222) (2020) ("For convenience of discussion, we have taken the enumerated errors out of the order in which [Bernal] has listed them.") (citation and punctuation omitted).

5

a duty to exercise its discretion and weigh the evidence and consider the credibility of the witnesses. If the trial court performs this duty, then we have no basis for reviewing the court's decision, as such a decision is one that is *solely* within the discretion of the trial court.

(Citations and punctuation omitted; emphasis supplied.) *Lundy v. State*, 341 Ga. App. 767, 769 (2) (801 SE2d 629) (2017). To that end, "[i]t is . . . true that where, as in this case, the judge who hears the motion for a new trial is not the same judge as the one who presided over the original trial, the discretion of the successor judge is narrower in scope." *State v. Harris*, 292 Ga. 92, 95 (734 SE2d 357) (2012). However, "after a thorough review of the case, even a successor judge may exercise a significant discretion to grant a new trial on the general grounds." (Citation omitted.) *Wiggins v. State*, 330 Ga. App. 205, 211 (c) (767 SE2d 798) (2014); see also *White v. State*, 293 Ga. 523, 525 (2), n. 4 (753 SE2d 115) (2013).

Here, the judge who presided over Bernal's trial retired before the hearing for Bernal's motion for new trial, at which the successor judge presided. During the motion for new trial hearing, the successor judge cited OCGA §§ 5-5-20 and 5-5-21 and stated that

it would be inappropriate for this Court to make a ruling sitting as a 13th juror. Because this Court did not conduct the trial, this Court cannot rule

6

on the credibility of the witnesses nor consider . . . the conflicts in the testimony of the witnesses at trial, because I was not the Trial Judge. So I'm not going to consider that ground. I think it would be inappropriate and it would be unfair. I was not the Trial Judge and I think that you have to be the Trial Judge to be able to rule as a 13th juror. Unless I'm wrong, which I don't think I am, I can't judge the credibility of the witnesses. I wasn't there.

In his written order, the successor judge stated only that he could not "make a ruling on the credibility of witnesses and conflicts in testimony given the witnesses' testimony was not observed by the Court." However, the successor judge did review the transcripts from Bernal's trial, and concluded that the jury's verdict was not "contrary to law" and that "[t]here was substantial evidence to support" the verdict. Moreover, the successor judge concluded that "a rational trier of fact could find [Bernal] guilty beyond a reasonable doubt of the crimes for which he was charged." As a result, the successor judge denied Bernal's motion for new trial as amended.

In view of the successor judge's statements during Bernal's motion for new trial hearing and the trial court's reliance upon the standard in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979) in its order denying Bernal's motion,

7

there is no evidence that the successor judge exercised discretion, weighed the evidence, and determined as the 'thirteenth juror' whether the verdict was against the great weight of the evidence or offended the principles of justice and equity. The order denying [Bernal's] motion for new trial shows that the trial court made only the legal determination that the evidence was sufficient under the standards of *Jackson v. Virginia*.

*Wiggins*, 330 Ga. App. at 211 (c). To the contrary, the successor judge specifically rejected any notion that he could exercise discretion in evaluating Bernal's general grounds argument. This was error. See *White*, 293 Ga. at 525 (2), n. 4; *Wiggins*, 330 Ga. App. at 211 (c).

Where, as here, the record reflects that the trial court applied an incorrect standard of review and, in so doing, failed to exercise its discretion and weigh the evidence in ruling on the merits of claims under OCGA §§ 5-5-20 and 5-5-21, the appellate court must vacate the judgment and remand the case to the trial court for consideration of the motion under the proper standard of review.

*Walker v. State*, 292 Ga. 262, 264-265 (2) (737 SE2d 311) (2013). Therefore, we vacate that portion of the trial court's order denying Bernal's motion for new trial on the "general grounds" and remand this case to the trial court to allow it to exercise its discretion in manner consistent with OCGA §§ 5-5-20 and 5-5-21. See *Hartley v.*

8

*State*, 299 Ga. App. 534, 541 (3) (683 SE2d 109) (2009) (vacating trial court order on a single ground and remanding); *Rutland v. State*, 296 Ga. App. 471, 476 (3) (675 SE2d 506) (2009) (same).

2. Because Bernal's remaining arguments involve pre-trial matters, including the admission of evidence that the trial court will review on remand, we turn next to a review of Bernal's remaining enumerations as appropriate. See, e.g., *Wilson v. State*, 349 Ga. App. 386, 388-389 (2) (a), (b) (825 SE2d 843) (2019) (considering trial court's evidentiary rulings prior to remand for review of the "general grounds"); *McGil v. State*, 339 Ga. App. 130, 131-133 (2), (3) (793 SE2d 442) (2016) (deciding evidentiary issues and ineffective assistance of trial counsel allegations based upon matters of evidence before remanding for "general grounds" analysis); *Rutland*, 296 Ga. App. at 476 (3) (reviewing defendant's photographic lineup argument prior to remand for consideration of the "general grounds").

(a) *Special Demurrer*. Bernal asserts that the trial court erred in denying his special demurrer to the child molestation and rape counts of the indictment. Specifically, Bernal contends that he was entitled to more information concerning the specific date the alleged crimes were committed. We find no error.

9

OCGA § 17-7-54 provides that an indictment must state with "sufficient certainty" the date of the alleged offense.

> Generally, an indictment which fails to allege a specific date on which the crime was committed is not perfect in form and is subject to a timely special demurrer. However, where the State can show that the evidence does not permit it to allege a specific date on which the offense occurred, the State is permitted to allege that the crime occurred between two particular dates. To that end, in meeting its burden of showing that it is unable either to identify a specific date on which an offense occurred or to narrow the range of possible dates, the State is required to present some evidence and may not rely solely upon argument by counsel or mere speculation.

(Citations and punctuation omitted.) *Watkins v. State*, 336 Ga. App. 145, 147-148 (2) (784 SE2d 11) (2016); see also *Rowland v. State*, 349 Ga. App. 650, 653 (3) (825 SE2d 650) (2019). "We conduct a de novo review of a trial court's ruling on a special demurrer in order to determine whether the allegations in the indictment are legally sufficient." (Citation and punctuation omitted.) *Rowland*, 349 Ga. App. at 653 (3).

In this case, the State indicted Bernal for child molestation alleging that he placed the child victim's hand on his penis and forced her head toward his penis "between the 1st day of July, 2015, and the 10th day of April, 2016, the exact date of the offense being unknown to the Grand Jury[.]" Similarly, Bernal's indictment for

10

rape alleged that he assaulted the adult victim "between the first day of May, 2015 and the 30th day of November, 2015, the exact date of the offense being unknown to the Grand Jury[.]" As a result, Bernal filed a special demurrer, arguing that the indictment was imperfect because it failed to "allege a specific date on which the alleged crime[s] [were] committed" and would prejudice his ability to prepare a defense to the crimes.

The trial court held a hearing on Bernal's demurrer prior to trial, in which Bernal asked that "the date range . . . be narrowed." During the hearing, an investigator testified that he attended the child victim's forensic interview in which she stated that the molestation occurred "awhile ago" but that she was "still 10 years old at the time." The investigator established the child victim's birth date as July 14, 2005, but the child victim did not offer any other details concerning the timing of the molestation. Accordingly, the investigator testified that he "couldn't really pinpoint it much more than that" because that was the only information he had relative to the date the crime occurred. Likewise, in a statement taken by the investigator, the adult girlfriend stated that Bernal raped her in 2015 and was "pretty sure . . . that it was the end of the summer." The trial court found that the dates alleged in the indictment

were not overly broad and that "the State has . . . shown that the evidence doesn't permit it to allege a specific date[,]" and denied Bernal's demurrer.

Based upon our de novo review, we conclude that the evidence presented during the hearing on Bernal's demurrer "confirmed that the [S]tate was unable either to identify a specific date on which the offenses occurred or to further narrow the range of possible dates." (Citation and punctuation omitted.) *Rowland*, 349 Ga. App. at 654 (3); see also *Watkins*, 336 Ga. App. at 148 (2). Therefore, we find no error.

(b) *Motion to Sever*. Bernal also argues that the trial court erred in denying his motion to sever his trial based upon the victims. We are not persuaded.

Under Georgia law,

> if multiple offenses are not joined solely because they are of the same or similar character, and evidence of one charged offense would be admissible as a similar transaction during trial on another charged offense, the trial court is vested with discretion in deciding whether to grant a motion to sever. In making this decision, the court must consider the number of offenses charged, the complexity of the charges, and the complexity of the evidence and determine whether the jury will be able to fairly and intelligently parse the evidence and apply the law with regard to each charge. Where in the sound discretion of the trial court, the number of offenses charged and the complexity of the evidence do not reasonably impinge upon a fair determination of the defendant's

12

guilt or innocence as to each offense charged, a severance need not be granted.

(Citations and punctuation omitted.) *Love v. State*, 349 Ga. App. 741, 744 (2) (824 SE2d 745) (2019). "We review a trial court's denial of a motion to sever the trial of separate charges for an abuse of discretion[.]" And, to that end, we have held that "the trial court does not abuse its discretion by denying a motion to sever if the evidence of one offense would be admissible as a similar act in the trial of the other offense." (Citations and punctuation omitted.) Id.; see also *Algren v. State*, 330 Ga. App. 1, 3 (1) (764 SE2d 611) (2014) (finding that "offenses have not been joined *solely* because they are of the same or similar character when the evidence of one offense can be admitted as similar transaction evidence during the trial of the other offense and severance is not mandatory in such a case") (citations and punctuation omitted; emphasis in original).

In this case, Bernal faced charges of rape against the adult victim, who was his long-time girlfriend, and child molestation against the child victim, his step-daughter. During a pre-trial hearing, Bernal's trial counsel asked that Bernal's charges be severed because "we have an accusation of adult rape and a separate accusation of

child molestation" and to reduce the potential for "a smear effect[.]" Later, Bernal's counsel claimed that

> we have three unrelated charges. They do, and I believe the State will reference this, they do have overlapping . . . witnesses, but they're disconnected entirely in their nature, in their chronology, and in which witnesses are most inclined to testify regarding which acts.

The trial court denied Bernal's motion to sever, noting "the connection of the parties [and] the connection of the acts, in terms of the nature . . . of the alleged acts and their connection to this family unit."[5]

Although the two crimes involved different victims, both crimes occurred in Bernal's home and included sexual abuse against members of his family unit. As a result, even had the charges been severed as Bernal requested, evidence of one crime would have been admissible as a prior act in the trial of the other. See, e.g., *Payne v. State*, 285 Ga. 137, 138-139 (674 SE2d 298) (2009), overruled in part on other grounds, *Reed v. State*, 291 Ga. 10, 14 (3) (727 SE2d 112) (2012); see also OCGA §§ 24-4-404 (b) (other acts evidence generally), 24-4-413 (similar transaction evidence

---

[5] The trial court also found that "the prejudicial effect of going forward on all three of [Bernal's charges], given their relevance, outweighs the . . . probity of their being tried together."

14

in sexual assault cases), 24-4-414 (similar transaction evidence in child molestation cases). It follows that the trial court did not abuse its discretion in denying Bernal's motion to sever. See, e.g., *Love*, 349 Ga. App. at 744 (2).

(c) *Motion to Suppress*. Bernal next contends the trial court erroneously denied his motion to suppress certain statements made during a non-custodial interview with the Canton Police Department. Although Bernal initially identifies several arguments advanced at trial, the true thrust of Bernal's argument in this Court is that the translation of Bernal's statements, offered through a police officer serving as an interpreter, was so inaccurate that the statements were actually the translating officer's statements and not Bernal's. We disagree.

At the outset, we note that Bernal's argument concerning the motion to suppress is an amalgamation of disparate issues, including chiefly the voluntariness of his statement, whether *Miranda*[6] warnings were necessary, and the inaccuracy of the transcript of his statement. Although none are meritorious, we address each in turn.

(i) *Miranda Warnings and Voluntariness*. "A suspect is not entitled to warnings under [*Miranda*] unless that suspect has been taken into police custody or

---

[6] *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LEd2d 694) (1966).

15

has been deprived of freedom of action in another significant way." (Citation omitted.) *Sams v. State*, 239 Ga. App. 715, 717 (2) (521 SE2d 848) (1999); see also *Pinckney v. State*, 259 Ga. App. 309, 312 (1) (576 SE2d 574) (2003) (concluding that if defendant "was not 'in custody' for *Miranda* purposes until after he made his [statement], there are no grounds for suppressing the statement"). As a result, "[i]n deciding whether a defendant was in custody, a court must examine all of the circumstances surrounding the interrogation, but the ultimate inquiry is simply whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." (Citation and punctuation omitted.) *Meadows v. State*, 264 Ga. App. 160, 167 (6) (590 SE2d 173) (2003). To that end, "[a]t a hearing held pursuant to *Jackson v. Denno*,[7] the trial court examines the totality of the circumstances to determine whether a preponderance of the evidence shows that [a] statement was voluntary." (Citation and punctuation omitted.) *Beaudoin v. State*, 311 Ga. App. 91, 93 (3) (714 SE2d 624) (2011). "The standard on appeal is that the trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on appeal unless they are clearly

---

[7] 378 U. S. 368 (84 SCt 1774, 12 LEd2d 908) (1964).

16

erroneous." *Lobdell v. State*, 256 Ga. 769, 773 (6) (353 SE2d 799) (1987); see also *Beaudoin*, 311 Ga. App. at 93 (3).

In this case, Bernal filed a preliminary motion to suppress attacking, among other things, an "illegal interrogation[.]" During a hearing on the eve of trial, the State announced that Bernal would proceed with a motion to suppress, "but it's ostensibly a *Jackson/Denno* hearing," a description that Bernal's counsel characterized as "accurate." The detective who took Bernal's statement testified that, after meeting with the adult victim, he asked Bernal if Bernal would visit the police station the next day to talk. Bernal was not under arrest at the time of his interview, was free to leave the station at any time during the interview, left the station after the 45-minute interview, and was not arrested after the interview. Moreover, the detective testified that he did not seek a warrant for Bernal after the interview.

Following the detective's testimony, Bernal's trial counsel stated that

I'm not certain this falls under *Jackson/Denno*, voluntariness of statements, but it does fall under a generalized motion to suppress. The State is now seeking to introduce statements that previously the State, through its officer, didn't believe met any threshold of probable cause for arrest.

17

If there's anything the State seeks to introduce from this statement, I'm going to object at trial that my client was not properly advised of his rights at the time that these statements were made.

If the State doesn't believe that anything was relevant or creates probable cause, then I don't know why we're going through this exercise.

After reviewing a transcript of Bernal's interview, the trial court found that there was no "suggestion of an involuntary statement in this transcript." As a result, the trial court declined "to rule [the statement] inadmissible. . . ."

We conclude that the evidence adduced during the pre-trial motion to suppress hearing "supports the trial court's findings that [Bernal's] statements were freely and voluntarily made, under noncustodial circumstances." *Sams*, 239 Ga. App. at 717 (2); see also *Beaudoin*, 311 Ga. App. at 94 (3); *Bass v. State*, 282 Ga. App. 159, 160 (2) (637 SE2d 863) (2006); *Taylor v. State*, 259 Ga. App. 457, 459 (1) (576 SE2d 916) (2003).

(ii) *Accuracy of Transcript of Statement*. As a threshold matter, Bernal did not raise this specific argument — that the translation of his interview with the detective

18

was inaccurate — in support of his motion to suppress in the trial court.[8] Accordingly, ordinary appellate review of the argument has been waived. See, e.g., *State v. Herrera-Bustamante*, 304 Ga. 259, 263 (2) (a) (818 SE2d 552) (2018) ("the general rule [is] that objections to the admission of evidence must be raised in a timely fashion at trial for the objection to be preserved for ordinary appellate review."); see also *Davis v. State*, 305 Ga. 640, 643 (2) (827 SE2d 265) (2019) (finding that claim could only be reviewed for plain error due to failure "to make a contemporaneous objection in the trial court").

However, "[t]he unavailability of ordinary review does not end our analysis of [Bernal's] evidentiary claim," *Herrera-Bustamante*, 304 Ga. at 263 (2) (b), because "our new Evidence Code permits plain error review of certain unpreserved evidentiary errors affecting substantial rights." (Citation and punctuation omitted.) *Adams v. State*, 306 Ga. 1, 3 (1) (829 SE2d 126) (2019); see also OCGA § 24-1-103 (d). To show plain error,

---

[8] Although the trial court overruled Bernal's objection to the introduction of the interview transcript at trial, , that ruling is not enumerated as error. See, e.g., *Day v. State*, 302 Ga. App. 883, 884 (1) (691 SE2d 920) (2010) ("[M]atters not enumerated as error will not be considered on appeal.").

there must [first] be an error or defect — some sort of deviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the trial court proceedings. Fourth and finally, if the above three prongs are satisfied, the appellate court has the discretion to remedy the error — discretion which ought to be exercised only if the error seriously affects the fairness, integrity or public reputation of judicial proceedings.

(Citation, emphasis, and punctuation omitted.) *State v. Kelly*, 290 Ga. 29, 33 (2) (a) (718 SE2d 232) (2011); see also *Herrera-Bustamante*, 304 Ga. at 264 (2) (b).

Pretermitting the remaining prongs of the plain-error analysis, we conclude that Bernal cannot demonstrate the third prong: that the error "affected the outcome of the trial court proceedings." (Punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a); see also *Anthony v. State*, 303 Ga. 399, 412 (11) (811 SE2d 399) (2018) (noting that defendant "has not even alleged that the outcome of his trial was likely affected by [the] admission [of challenged evidence]"). Of primary importance, both victims offered direct evidence of, and were subjected to cross-examination concerning, the details of Bernal's abuse. See OCGA § 24-14-8 ("The testimony of a single witness is

20

generally sufficient to establish a fact."); *Brown v. State*, 324 Ga. App. 718, 720 (1) (751 SE2d 517) (2013); *Reid v. State*, 319 Ga. App. 782, 783 (1) (738 SE2d 624) (2013) ("the testimony of a single witness is generally sufficient to prove a fact, including child molestation"). Therefore, we cannot say that the admission of Bernal's noncustodial statement "affected the outcome of the trial court proceedings." (Punctuation omitted.) *Kelly*, 290 Ga. at 33 (2) (a). As a result, we conclude that Bernal has failed to demonstrate plain error.

3. Finally, Bernal asserts that he received ineffective assistance of trial counsel due to counsel's failure to advise him of his right to present evidence at sentencing. In view of our decision in Division 1, supra, we need not consider Bernal's argument at this time. See, e.g., *Walker*, 292 Ga. at 262, 265 (2) (declining to consider ineffective assistance of trial counsel in view of remand for consideration of the "general grounds").

In sum, we conclude the trial court failed to exercise its discretion in reviewing Bernal's argument based upon OCGA §§ 5-5-20 and 5-5-21. Therefore, we vacate in part the trial court's order denying Bernal's motion for new trial and remand this case for further proceedings consistent with this opinion; as a result, we need not consider

Bernal's allegation of ineffective assistance of trial counsel during sentencing at this time. Finding no other error, we affirm the remainder of the trial court's order.

*Judgment affirmed in part, vacated in part, and case remanded. McFadden, C. J., and Doyle, P. J., concur.*